BRADLEY PIERCE v. AMERICAN FIDELITY FIRE INSURANCE
COMPANY, INC.

(Filed 22 September, 1954.)

1. **Trial § 22a—**

   On motion to nonsuit, plaintiff's evidence is to be considered in the light most favorable to him.

2. **Fraud § 3—**

   As a general rule, a mere promissory representation will not support an action for fraud.

3. **Same—**

   A promissory representation will support an action for fraud if the promise is made with no intention to carry it out and the promise constitutes a misrepresentation of a material fact which induces the promisee to act thereon to his injury.

4. **Insurance § 43½—**

   Where the insurer in an automobile collision policy elects to repair the damaged automobile, insurer, under the provisions of the contract, is bound to repair the automobile and restore it to its former condition, and its authorization to the repairman to return the car to insured upon delivery by insured of a release, constitutes at least a tacit representation that the repairs had been properly made.

5. **Same—Insured may rescind release for misrepresentations that damage to car covered by policy had been repaired.**

   Insurer in an automobile collision policy elected to have the damaged car repaired, and agreed with insured's agent that it might be repaired by

567

a certain person, whom insurer's agent represented to be a reputable repairman who would make satisfactory repairs. Insured's evidence tended to show that he executed a release which was delivered to the repairman by his agent, and that immediately after delivery of the car by the repairman it was ascertained that the repairs had not been properly made. *Held:* Insurer's contention that the representations of his agent were solely promissory and would not support rescission of the release for fraud is untenable, since insurer, irrespective of the representations of its agent, at least tacitly represented that the repairs would satisfactorily be made, which, under the evidence, constituted a misrepresentation of material fact which induced insured to act in reliance thereon to his injury.

**6. Same—**

Insurer in an automobile collision policy elected to have the damaged car repaired. After notification by insurer that the car was ready for delivery, insured's agent delivered a release to the repairman, was then shown the car in a darkened room, and requested permission to try the car out before accepting delivery, which request was refused. *Held:* Under the evidence adduced in this case, the delivery of the release before request of permission to try out the car does not preclude the submission of the issue as to whether the release was obtained by fraudulent misrepresentations that the car had been properly repaired.

**7. Same: Waiver § 2—**

Insurer in an automobile collision policy elected to have the damaged car repaired. After the execution and delivery to the repairman of a release, and after insured had taken possession of the car and ascertained that the repairs had not satisfactorily been made, insurer's agent authorized the return of the car for reinspection and further repairs, if necessary. *Held:* Insurer waived the release, and insured could maintain an action against insurer for breach of the insurance contract upon evidence that the car had not properly been repaired and tendered to him within a reasonable time.

**8. Damages § 13a: Appeal and Error § 39f—**

Insurer in an automobile collision policy elected to have the damaged car repaired. After initial delivery of the car to insured by the repairman, additional repairs were made. Instructions that the measure of damages would be the difference between the fair market value of the car immediately before it was damaged and its fair market value after it was repaired, *held* not prejudicial as excluding the additional repairs from the consideration of the jury, it appearing that in other portions of the charge the court called the jury's attention to the additional repairs and to the testimony as to the fair market value of the car after all the repairs had been made.

APPEAL by defendant from *Carr, J.,* April Term, 1954, of CURRITUCK.

This is a civil action to recover for loss sustained by the plaintiff resulting from an automobile collision, bottomed on the facts hereinafter set out.

The defendant, on 31 May, 1951, issued a policy of insurance upon the plaintiff's automobile, a new 1951 Model Deluxe Henry J two-door sedan,

which cost $1,593.00, by the terms of which policy the company agreed to pay for direct and accidental loss or damage to the automobile sustained during the policy period as a result of collision or upset, less $50.00.

On Saturday, 21 May, 1952, while the policy of insurance was in effect, the plaintiff's automobile was badly damaged in a collision. The collision was duly and promptly reported to the defendant.

The defendant elected, as it had a right to do under the terms of its policy, to have the automobile repaired in lieu of paying the plaintiff in cash for the damages resulting from the collision. The plaintiff alleges that he had estimates made by two reputable automobile repair agencies on the cost of repairing his car, the low bid being $1,080.00. The defendant, through its adjuster, considered the estimates too high and took possession of the car early in June, 1952. In the meantime, the plaintiff had a heart attack and was ill for several months. The defendant, through its adjuster, dealt with Mrs. Pierce and requested her permission to have the car repaired by Ventura's Auto Center in Portsmouth, Virginia, stating that this concern was cheaper than anybody else. Mrs. Pierce testified that she gave her permission after being assured by the adjuster that the car would be put in excellent condition and that he would guarantee it would be in good shape when she got it back.

On or about 12 August, 1952, the adjuster mailed to plaintiff a release and informed him that it would be necessary to have the release executed before a notary public and delivered before he could get his car. Inquiry revealed the car had not been repaired and plaintiff refused to execute the release until his car was ready for delivery. He was notified on 13 September, 1952, by the adjuster that his car was ready to be picked up. Whereupon, the plaintiff, not being physically able to go to Portsmouth to get the car, executed the release and gave it to his wife, and, according to the evidence, instructed her not to deliver it unless the car was in good condition.

According to the testimony of Mrs. Pierce, she was requested by the insurance adjuster to deliver the release to Mr. Ventura and did,so before she saw the car; that she then saw the car which was in a dark room and it looked fairly well until she got it outside where she could see it; that she requested permission to try it out but she was told by Mr. Ventura that she could not do so, that the car was her's and he was not responsible for it any more; that she discovered before she got the car into the street that it was not in proper repair; that she tried to put the brakes on and found it had no brakes; that she planned to have her daughter and her son-in-law ride with her, but when they got in the car it began to scrape and she had to lighten the load in order to drive it; that she had to have the car worked on after she left Ventura's before she could drive it home; that she drove it home with great difficulty and later returned it to Ven-

tura's place of business at the suggestion of the adjuster who agreed in writing, by letter dated 26 September, 1952, to have the car reinspected and to have additional repairs made if necessary. Satisfactory repairs were not made and the car is still in the custody of the defendant or its agent. It is conceded, however, by the defendant that the car is still the property of the plaintiff.

The plaintiff offered evidence to the effect that after additional repairs were purportedly made by Ventura, the car was not in usable condition; that at that time the car had a fair market value of only $300.00 to $350.00, and that its fair market value immediately prior to the collision was $1,500.00.

The defendant set up the release executed by the plaintiff as a bar to any recovery by plaintiff. The release is in the usual form and purports to have been executed in consideration of the payment by the defendant to Ventura's Auto Center of $680.34, less $50.00 which was paid by the plaintiff, as the "agreed loss and damage" to plaintiff's automobile. Plaintiff in his reply alleges that the execution of the release was procured by fraud and misrepresentation.

Appropriate issues were submitted to the jury and answered to the effect that the execution and delivery of the release was obtained by fraudulent misrepresentation as alleged in the reply; that the defendant had breached its contract of insurance as alleged in the complaint, and awarded the plaintiff damages in the sum of $1,100.00. The defendant appeals, assigning error.

*John H. Hall and LeRoy & Goodwin for appellee.*
*McMullan & Aydlett for appellant.*

DENNY, J. The defendant challenges the sufficiency of the plaintiff's evidence to withstand its motion for judgment as of nonsuit interposed at the close of plaintiff's evidence and renewed at the close of all the evidence. In our opinion, however, when plaintiff's evidence is considered in the light most favorable to him, as it must be on such motion, it is sufficient to carry the case to the jury. *Chambers v. Allen,* 233 N.C. 195, 63 S.E. 2d 212; *Winfield v. Smith,* 230 N.C. 392, 53 S.E. 2d 251; *Grier v. Phillips,* 230 N.C. 672, 55 S.E. 2d 485.

The defendant excepts and assigns as error the refusal of the trial court to comply with its written request to the effect that if the jury believed the evidence and the facts to be as testified, to answer the issue with respect to fraud and misrepresentation in the procurement of the release in favor of the defendant.

The defendant argues that Mrs. Pierce, agent for the plaintiff, and the adjuster, agent for the defendant, agreed that the damaged automobile

might be repaired by Ventura and that its agent only advised Mrs. Pierce that Ventura was a reputable automobile repair man and would make satisfactory repairs. Therefore, it contends that the misrepresentations made in its behalf, if any, were only promissory in nature and insufficient to support an allegation of fraud, citing *Mitchell v. Mitchell,* 206 N.C. 546, 174 S.E. 447.

The general rule in this respect is to the effect that an unfilled promise cannot be made the basis for an action for fraud. *Davis v. Davis,* 236 N.C. 208, 72 S.E. 2d 414; *Williams v. Williams,* 220 N.C. 806, 18 S.E. 2d 364; *Shoffner v. Thompson,* 197 N.C. 664, 150 S.E. 195; *Pritchard v. Dailey,* 168 N.C. 330, 84 S.E. 392; 23 Am. Jur., Fraud and Deceit, section 38, page 799, *et seq.* The rule, however, is otherwise if the promise is made with no intention to carry it out, and such promise constitutes a misrepresentation of a material fact and the promisee is induced thereby to act upon it to his injury. *Davis v. Davis, supra; Williams v. Williams, supra; Mitchell v. Mitchell, supra; Trust Co. v. Yelverton,* 185 N.C. 314, 117 S.E. 299.

In the instant case, the consideration which the plaintiff was to receive upon the execution and delivery of the release was not to be in money, but in the return of his automobile duly and properly repaired. As stated in Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 6, page 500, ". . . where the insurer elects to repair the damaged automobile and represents, at least tacitly, that it will place the vehicle in the condition that it was in previously, the insured has no choice but to acquiesce, and the original contract of the parties is converted into a new one, under which the insurer is bound to repair the automobile and restore it to its former condition." The plaintiff's car, according to the record, has not been so restored. The defendant's evidence establishes the fact conclusively that when the plaintiff's automobile was delivered to his wife on 13 September, 1952, it had not been repaired as contemplated under the provisions of the insurance policy in the event the insurer elected to have the car repaired, as it did in this case, in lieu of payment for the damages resulting from the collision. The adjuster of the defendant not only authorized the return of the car, after the execution and delivery of the release, to Ventura's Auto Center for reinspection and additional repairs if necessary, but his testimony with respect to the condition of the car when returned was as follows: "I looked over the car after it was wrecked and also after it was returned by Mrs. Pierce following the repairs. It needed repairs in several instances. I had several independent agencies give us an estimate and two dealers gave us statements that the car was not properly repaired and needed additional work."

In light of the evidence adduced in the trial below, the fact that Mrs. Pierce delivered the release to Mr. Ventura before requesting permission

to try out the car would not, in view of his immediate refusal to permit the car to be tried out, warrant a refusal on the part of the court to submit the issue as to misrepresentation and fraud in its procurement. Even so, in our opinion, the defendant waived the provisions of the release by authorizing the return of the car for reinspection and further repairs, if necessary, and we so hold. Therefore, the plaintiff had a right to maintain an action for damages against the defendant for breach of the insurance contract when the car was not properly repaired and tendered to him within a reasonable time. Hence, the finding to the effect that the execution and delivery of the release was obtained by fraud and misrepresentation becomes immaterial, and the assignment of error in respect thereto is overruled.

Assignments of error Nos. 4, 5, 6, and 7 are based on exceptions to the charge with respect to damages. The challenged portions of the charge are to the effect that the plaintiff is entitled to recover, if he is entitled to recover at all, the difference in the fair market value of the automobile immediately before it was damaged in the collision, and the fair market value after it was repaired at Ventura's place of business for the price paid by the insurance company, plus $50.00 paid by the plaintiff.

The defendant contends that this charge was not sufficient to include the additional repairs made to the automobile after it was returned to Ventura's place of business. We do not concur in this view, in light of the only evidence as to the fair market value of the car after the collision, which was that of M. S. Cridlin, the operator of an automobile repair shop, paint shop, and an agency for the sale of Kaiser-Frazer cars including Henry J, in Elizabeth City, North Carolina. This witness testified that the fair market value of plaintiff's car immediately prior to the collision was $1,500.00; that at the time of the collision a new 1951 Henry J automobile would have cost a little over $1,800.00; that he inspected the plaintiff's car three days after the collision and that it had a fair market value of $150.00 as junk; that he went to Ventura's place of business in Portsmouth, Virginia, which appeared to be a junk yard, and inspected plaintiff's car after the additional repairs had purportedly been made; that the car was still not in proper repair and had a fair market value of only $300.00 to $350.00. The court called the jurors' attention to this evidence and pointed out that Mr. Cridlin testified that after the car had been repaired twice at Ventura's place it had a fair market value of around $350.00. Consequently, we do not think any prejudicial error that would warrant a new trial has been made to appear. *Barton v. Farmers Insurance Exchange* (Mo. App.), 255 S.W. 2d 451. Hence, in law, we find

No error.