738

41226, 41227.   SIMMONS v. STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY; and vice versa.

ARGUED MARCH 15, 1965—DECIDED MAY 24, 1965.

*Hatcher, Meyerson, Oxford & Irvin, Henry M. Hatcher, Jr.,*
for plaintiff in error.

*Powell, Goldstein, Frazer & Murphy, Edward E. Dorsey, Gregg
Loomis, B. Hugh Burgess, C. B. Rogers,* contra.

RUSSELL, Judge. ■ *Code Ann.* § 110-1203 stipulates, as to motions for summary judgment: "The adverse party prior to the day of hearing may serve opposing affidavits." There may be situations where a failure to serve the opposing affidavits prior to the day of hearing will result in the trial court refusing with propriety to allow them to be filed, or situations where the court may allow them to be filed but in such event grant a motion for continuance. In general, the judge hearing the motion has a large discretion and "may reduce or enlarge any time requirements prescribed herein for the filing of any documents or pleadings, or for the hearing date on any motion filed hereunder." *Code Ann.* § 110-1207. In the present case the motion for summary judgment on behalf of the defendant was filed on December 10, 1964, and a rule nisi entered for January 22, 1965. By agreement of the parties the hearing date was reset and moved up to December 16, 1964, resulting in a waiver of the 30-day period allowed for response. The trial court permitted the plaintiff to serve the defendant with his response and a set of supporting affidavits on the day of but prior to the hearing, overruled the defendant's motion to strike the affidavits as not having been filed in time, and also permitted the plaintiff to file two additional affidavits on the same day after the court had announced that he intended to render summary judgment for the defendant but before the order had been reduced to writing.

The oral announcement by the trial judge of the manner in which he intends to rule is not a judgment until reduced to writing. *Williams v. City of LaGrange,* 213 Ga. 241 (98 SE2d 617); *Salem v. Samuel,* 102 Ga. App. 681 (117 SE2d 547). The court had a right to consider the amendment and additional affidavits at the time they were tendered. The refusal to strike the affidavits because they had not been served on a date prior to the hearing date, also, does not appear to be an abuse of discretion under the facts of this case. The defendant has made no showing that it was harmed, and did not move for a continuance on the ground of surprise or for any other reason. Since a summary judgment is a peremptory method of disposing of a case once and for all on its merits, courts will be cautious about foreclosing parties from a valid defense, and this we believe to be the plain meaning of *Code Ann.* § 110-1207. The assignments of error in the cross bill of exceptions are without merit.

■ The plaintiff's insurance contract covered loss due to collision with a deductible amount of $100, and contained provisions that "the limit of the company's liability for loss shall not exceed the actual cash value of the property . . . nor what it would then cost to repair or replace such property with like kind and quality, less depreciation and deductible amount applicable. . . . The company may at its option pay for the loss in money or may repair or replace the property or such part thereof as aforesaid . . . or may take all or such part of the property at the agreed value but there shall be no abandonment to the company." These provisions are substantially identical with those involved in the controversy covered by *Dependable Ins. Co. v. Gibbs,* 218 Ga. 305, 315 (127 SE2d 454). There the court held "that the primary obligation of the insurer was to pay for the loss caused by collision and that the correct measure of that loss would be the difference in the market value of the automobile immediately before the collision and the combined amount of its market value immediately after being repaired, plus the $100 deductible. This measure of damages has been recognized in other jurisdictions as the proper measure of damages under an automobile collision insurance policy where the insurer elected to make repairs and did so defectively. See 43 ALR2d 346." From this we determine that the defendant insurance company here had an option to pay for the loss in money, to repair the vehicle, or to replace it with other property of like kind and quality, but the contract requires that no matter which alternative is chosen, the market value of the property plus $100 after payment must equal the market value before the loss. This is the rule generally with this type of policy. In Pierce v. American Fidelity Fire Ins. Co., 240 N. C. 567 (83 SE2d 493) it was stated: "Where the insurer elects to repair the damaged automobile and represents, at least tacitly, that it will place the vehicle in the condition that it was in previously, the insured has no choice but to acquiesce, and the original contract of the parties is converted into a new one, under which the insurer is bound to repair the automobile and restore it to its former condition." To the same effect see Blashfield, Cyclopedia of Automobile Law & Practice, Vol. 6, p. 500.

The defendant's motion for summary judgment was based on

the affirmative defense that it had exercised its option to repair the plaintiff's automobile, that the automobile could have been repaired for $904.28, and that defendant admitted its liability in the sum of $804.28 which it tendered into court. Attached to the motion was a repair estimate on the letterhead of Wade Ford, Inc. in the sum of $904.28 including 33 items involving bumpers, grill, radiator, fan, hood, doors, panels, top, wheel housing, and other major parts of the automobile assembly. An affidavit of the defendant's Superintendent of Claims states "that Wade Ford, Inc. guaranteed to make such repairs on plaintiff's automobile as was necessary to restore . . . to its condition immediately prior to the collision." An affidavit of an employee of Wade Ford verifies the estimate and states that deponent "estimated that the same could be repaired by Wade Ford for $904.28." The plaintiff's affidavit states no repairs have been guaranteed to him, he was specifically told that no determination could be made until after extensive repairs as to whether there was additional transmission and engine damage. The affidavit of Henry Hatcher is to the effect that the Wade Ford employee whose affidavit was attached to the defendant's motion told him that the repairs set out in the attached estimate would not restore the automobile to its condition prior to the collision. Other affidavits are to the effect that the car cannot be restored, and contain statements of its value before and after the collision. On August 19, 1963, defendant wrote the plaintiff: "The estimate which you obtained from Wade Ford Company is a guaranteed one whereby that company guaranteed to make the necessary repairs in a workmanlike manner which are necessary to restore the vehicle to its condition prior to the accident. In view of the fact . . . we stand ready to pay to you at any time $804.28." On March 3, 1964, it again wrote plaintiff's attorneys: "We choose to exercise our right under the policy today for the damage, and stand ready to issue our draft. . ."

It is obvious that while both parties have established a repair estimate in the amount of $904.28, neither has established whether this estimate is or is not a commitment to restore the automobile to its condition prior to the collision. The Wade Ford employee, the only one with first-hand knowledge, fails to state this, and the affidavits of the plaintiff and defendant, both being

hearsay as to this fact, are completely worthless to establish or refute it. "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated herein." *Code Ann.* § 110-1205, and see *Planters Rural Tel. Coop. v. Chance,* 108 Ga. App. 146 (132 SE2d 90). The defendant had a right to elect to repair the automobile rather than to pay for the loss, but in the absence of an agreement between the parties, or an uncontradicted showing by one or the other that a given sum of money will restore the market value of the vehicle to its former level, it has no absolute right to pay to the insured the amount specified in the lowest of several repair estimates and then substitute the guarantee of the garage, if any there was, for its own responsibility for seeing that the repairs accomplish this result. The language used in the March 3 letter that the insurance company elected to exercise its right "for the damage," accompanied by tender of $804.28, has the ring of a money settlement rather than an election to repair. If the draft on presentation required the payee's signature to a release of all claims, this would be the only possible result, but, in any event, the communications from the insurer show that it intended for the insured to rely on the guarantee of the repairman, but failed to show that such a guarantee had in fact been made.

The party moving for a summary judgment has the burden of showing that no material issue of fact remains in the case. *Motorola Communications &c., Inc. v. South Ga. Natural Gas Co.,* 104 Ga. App. 376 (121 SE2d 672). The defendant insurance company, under the contention that it was exercising its option to repair the damaged vehicle, had the burden of showing by competent evidence that the sum of $904.28 would restore the vehicle to its market value prior to the loss, and this it failed to do. The issue accordingly remains for jury determination, and it was error to grant the motion for summary judgment.

*Judgment reversed on main bill of exceptions; affirmed on cross bill. Felton, C. J., and Jordan, J., concur.*