RAY HAMM AND ROE CHURCH v. TEXACO INCORPORATED, ELLER & HUFFMAN, INCORPORATED, AND JOE HUFFMAN

No. 7323DC153

(Filed 28 February 1973)

1. Contracts § 27— insufficiency of evidence to show contract

Plaintiffs' evidence was insufficient to establish the existence of a contract between the plaintiffs and the defendants where it tended to show negotiations which were intended to culminate in a five-year written contract, but there was no evidence tending to show that the parties' minds had met upon terms sufficiently definite to be enforced.

2. Rules of Civil Procedure §§ 41, 50— motion to dismiss — nonjury trial — motion for directed verdict — jury trial

A motion to dismiss under G.S. 1A-1, Rule 41(b), is properly made only in cases tried by a judge without a jury, the proper motion in jury cases being for a directed verdict under G.S. 1A-1, Rule 50(a).

APPEAL by plaintiffs from *Osborne, District Judge,* 14 July 1972 Session of District Court held in ALLEGHANY County.

This is a civil action to recover damages for an alleged breach of contract by the defendants. Prior to the trial of the cause and upon motion for summary judgment and a hearing thereon, the action was dismissed on the merits as to defendant Texaco Incorporated.

The plaintiffs Church and Hamm entered into what appears to have been an informal partnership arrangement to build and operate a service station on property owned by the plaintiff Hamm and situated on N. C. Highway 18 approximately one-half mile west of the town limits of Sparta, North Carolina. The defendant Joe Huffman was the agent of the defendant Eller & Huffman, Incorporated, a corporation with its principal place

of business in North Wilkesboro, North Carolina, engaged in the business of distributing Texaco products to service stations.

The plaintiffs alleged in their complaint that in the Spring of 1970 they negotiated with the defendant Huffman "with the view toward working out an agreement whereby they [the defendants] could put in Texaco products" to supply the plaintiffs' service staton business. Plaintiffs further alleged:

> "(T)hat said negotiations led to the offer by Joe Huffman, as agent of Eller & Huffman, Inc., who were agents of Texaco Inc., upon completion of the construction of a building by the plaintiffs, to install underground storage tanks, pumps, car lift, air compressor, lighting for the outside of the service station, paint the building, and do the necessary concrete work for driveways, islands, etc., said work to be completed by November 1, 1970.

> *Subsequently this agreement was reduced to writing, said writing being signed by the plaintiff Ray Hamm and the defendant Joe Huffman.* All copies of this agreement were at that time kept by Joe Huffman.

> &#42;          &#42;          &#42;

> &#42; &#42; &#42; On February 3, 1971, the plaintiff received correspondence from Eller & Huffman, Inc., executed by Joe Huffman, stating that Eller & Huffman, Inc. would not proceed further with the contract. &#42; &#42; &#42; " (Emphasis added.)

At the trial of the cause, the plaintiffs introduced evidence tending to show that they began negotiating with defendant Huffman in the Spring of 1970 and that at a meeting with Huffman in June of 1970 Huffman said that "he would put in tanks, pumps and lighting and pave the front on a five-year contract." Thereafter, plaintiff Hamm borrowed $12,000 and built a living area and service station building on his tract of land; an addition to the building was added pursuant to specifications provided by defendant Huffman in order to house a "car lift" at a cost of $4,000. The plaintiff Hamm testified that from his dealings with Mr. Huffman, November 1, 1970 was the date they should have commenced business; that prior to November 1, 1970, Huffman did not advise him that there had to be an approval by anyone else. About the first of the year [1971], he said a man would have to come and approve it;

and, after he came "he said they wouldn't approve it or anything and didn't give me no chance to make any alterations in order for them to approve it. They gave no reasons for disapproval."

Plaintiff Hamm also testified that during all the time he was working on the project, he dealt with Huffman without knowing his connection with a corporation. However, on 28 October 1970, Hamm signed a contract at his attorney's office, a copy of which was introduced into evidence by the plaintiffs, but which was not included in the record on appeal or filed as an exhibit in this court. Thereafter, Hamm signed a second contract in November, which apparently was intended to be a substitute for the first contract. No copy of the second contract has been filed in this court or included in the record on appeal. Hamm testified that Huffman was present at the signing but that he didn't see him sign. Hamm signed about six copies and turned them over to Huffman. Hamm understood that someone else was to sign the contract. He did not know who was to sign but he was dealing directly with Huffman.

At the completion of the plaintiffs' evidence, the defendants moved for an involuntary dismissal pursuant to G.S. 1A-1, Rule 41. The motion was allowed by the trial court, and the plaintiffs appealed, assigning error.

*Arnold L. Young for plaintiff appellants.*

*Hayes & Hayes by Kyle Hayes and Douglas L. Winslow, for defendant appellees.*

BROCK, Judge.

[1]  Plaintiffs assign as error the trial judge's entry of a judgment, pursuant to G.S. 1A-1, Rule 41(b), dismissing the plaintiffs' action. This assignment of error presents the question whether there was sufficient evidence, when viewed in the light most favorable to the plaintiffs, to establish the existence of a contract between the plaintiffs and the defendants.

In *Horton v. Refining Company*, 255 N.C. 675, 122 S.E. 2d 716 (1961), a case factually similar to the one at bar, Chief Justice Winborne stated:

"In *Williamson v. Miller*, 231 N.C. 722, 58 S.E. 2d 743, this Court said: 'To be binding, the terms of a contract must be definite and certain or capable of being made so.' (Citations omitted.)

"In *Elks v. Ins. Co., supra* [159 N.C. 619, 75 S.E. 808], this Court said: 'It is elementary that it is necessary that the minds of the parties meet upon a definite proposition. "There is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense. A contract requires the assent of the parties to an agreement, and this agreement must be obligatory, and, as we have seen, the obligation must, in general, be mutual." 1 Par. Con., 475.' "

In the case at bar, the evidence presented by the plaintiffs tends to show negotiations by the parties which were intended to culminate in a "five-year contract" in written form.

In *Elks v. Ins. Co., supra,* it is said that where the minds of the parties "meet upon a proposition which is sufficiently definite to be enforced, the contract is complete, although it is in the contemplation of the parties that it shall be reduced to writing as a memorial or evidence of the contract; but if it appears that the parties are merely negotiating to see if they can agree upon terms, and that the writing is to be the contract, then there is no contract until the writing is executed." Here, there is no evidence which would tend to show that the parties' minds met upon terms sufficiently definite to be enforced. Rather, the evidence tends to show that there was to be a written agreement executed by both parties and that there was to be no contract until the writing was executed.

[2] The judgment entered in this case recites that the cause was heard before the judge *and jury.* The judgment also recites that defendant moved for dismissal under Rule 41. G.S. 1A-1, Rule 41(b) is applicable where a cause is tried before the judge *without a jury;* a motion to dismiss under this rule is not properly available in cases being tried by jury. The proper motion would have been a motion for directed verdict under Rule 50(a). General Rules of Practice for the Superior and District Courts adopted by the Supreme Court on 14 May 1970, pursuant to G.S. 7A-34, provide in Rule 6 that "(a)ll motions . . . shall state the rule number or numbers under which the movant is proceeding." In this case movants stated that they were proceeding under Rule 41. Obviously movants were not entitled to relief under Rule 41 because the case was being tried before a jury. However, plaintiffs made no objection to the improper motion, and they may not raise the question for the first time on appeal. We, therefore, treat the judgment of

dismissal in the present case as having been entered pursuant to a motion for directed verdict under Rule 50 (a). *See Pergerson v. Williams,* 9 N.C. App. 512, 176 S.E. 2d 885.

Affirmed.

Judges MORRIS and HEDRICK concur.