THE NORTHWESTERN BANK v. JAMES E. RASH AND WIFE, SHIRLEY R. RASH

No. 8429SC720

(Filed 2 April 1985)

**1. Fraud § 12— misrepresentation of ownership—absence of detriment**

Defendants failed to make out a case of fraud entitling them to cancellation of a note given to plaintiff bank for the purchase of real property based on the bank's misrepresentation that it owned the property where defendants received the title to the property for which they contracted. The fact that this title was delivered from someone other than the plaintiff does not establish fraud by plaintiff.

**2. Fraud § 5— absence of reliance on misrepresentation**

Defendants failed to make out a case of fraud entitling them to cancellation of a note given to plaintiff bank for the purchase of real property based on the bank's misrepresentation of the amount of rent the property was producing where the evidence showed that defendants executed the note sued on some sixteen months after they learned that the bank's representation was false and that defendants thus did not rely on such representation in executing the note.

**3. Fraud § 12— failure to show false statement**

Defendants' evidence failed to show that plaintiff bank's representation as to the value of repairs made to property purchased by defendants was false so as to entitle defendants to cancellation of a note given for the property on the basis of fraud.

**4. Fraud § 3.1— promissory representation—failure to show intent not to comply**

Defendants' evidence was insufficient to show that plaintiff was guilty of fraud in promising to take back property sold to defendants if defendants

could not make money on the property where there was no evidence from which a jury could find that plaintiff made the promise to take back the property with no intent to honor it.

APPEAL by defendants from *Snepp, Judge.* Judgment entered 11 January 1985 in Superior Court, RUTHERFORD County. Heard in the Court of Appeals 7 March 1985.

This is a civil action wherein the plaintiff sued on a note executed by the defendants. The defendants answered admitting execution of the note, but counterclaimed seeking a cancellation of the note on the grounds that it was procured through fraud. The case came on for trial during the 9 January 1984 Civil Session of Rutherford County Superior Court. At the close of defendants' evidence the court granted plaintiff's motion for a directed verdict against the defendants as to the counterclaim and for plaintiff on its principal claim. Judgment was entered against defendants for $51,082.59. From this judgment, defendants appeal.

*George R. Morrow for plaintiff appellee.*

*Brenda S. McLain for defendant appellants.*

ARNOLD, Judge.

The sole issue presented for review is whether the court erred in granting plaintiff's motion to dismiss defendants' counterclaim at the close of the defendants' evidence. Believing the trial court properly found that defendants had failed to produce sufficient evidence to submit the issue of whether the plaintiff had fraudulently procured the execution of the note upon which it sued, we affirm the trial court's judgment.

The record indicates that this case was tried before a judge and jury. The record further shows that at the close of the defendants' evidence the plaintiff moved to dismiss defendants' counterclaim, and that this motion was granted. Motions to dismiss pursuant to Rule 41(b) of the North Carolina Rules of Civil Procedure are applicable only in cases where the matter is tried before a judge sitting without a jury. The proper motion in the present case would have been a motion for a directed verdict pursuant to Rule 50(a) of the North Carolina Rules of Civil Procedure. However, defendants made no objection to the improper motion, thus, we will treat the court's order as having been

entered pursuant to a motion for a directed verdict under Rule 50(a). *Hamm v. Texaco Inc.*, 17 N.C. App. 451, 194 S.E. 2d 560 (1973).

A directed verdict is proper only when taking non-movants' evidence as true and in the light most favorable to them the evidence is insufficient to justify a verdict for the non-movants. *See Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974). The evidence in the case *sub judice*, when taken in the light most favorable to the defendants, tended to show the following. In March 1979 James Rash and J. C. Allen, a vice-president of the Northwestern Bank in Forest City, discussed the possibility of Rash buying some rental property on which the Bank had recently foreclosed. Allen agreed to let Rash have a 100% loan on the property at an interest rate 1½% below the prime rate. Allen told Rash to make the interest payment on the property for a year and if he couldn't handle the property, the Bank would take the property back. Allen also told Rash that each of the nine rental houses were rented, and each house bringing in $80 per month in rent. Finally, Allen told Rash that $20,000 in repairs had recently been made on the houses. Rash, relying upon these statements and a belief that the bank owned the property, agreed to purchase the property. On 20 March 1979, Rash and his wife bought the property and executed a $48,500 note payable on demand. Interest was to accrue at a rate of 9% per annum and was payable on demand, quarterly. Shortly after the transaction, the defendants received a deed for the property from Richard Morrow. After taking over the property the defendants learned that not all the houses were rented and that those houses which were rented were only bringing in $40 per month. The defendants also learned that several of the units needed extensive repairs. Defendants held the property for a year, and then began discussions with Allen about the plaintiff taking back the property. On 26 June 1980, the defendants signed a second note, the one which is the subject of this action, in the amount of $48,500 with an interest rate of 9% which called for 59 monthly payments of $616.24 with a final balloon installment payment of $30,294.88 which was to be paid on 7 July 1985. Following the execution of the second note the defendants made six payments of principal and interest, six payments of interest only and one $5,000 payment toward the reduction of the principal. The last payment

defendants made on the property was in August 1981. In March 1982, Mr. Rash had a deed drawn which conveyed the property to the plaintiff. He tendered this deed along with the surplus revenues which he had collected from the property to a bank official. The plaintiff refused to accept the deed and the money. In June 1982, after demanding payment, plaintiff filed suit to collect the note.

In order to establish fraud the defendants must show that the plaintiff made a representation relating to a material fact; that the representation was false; that plaintiff knew or should have known at the time it was made that it was false; that the false representation was made with the intention that it should be relied upon by the defendants; and that the defendants did in fact reasonably rely, to their detriment, upon the false representation. *Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980). The defendants argue that the plaintiff made four false representations each of which entitled them to prevail on the counterclaim. These representations were (a) that the plaintiff owned the property; (b) that each of the rental units was bringing in $80 rent per month; (c) that $20,000 in repairs had been done upon the property; and (d) that if the defendants could not make a profit on the property the plaintiff would take the property back and cancel the note. We will examine each of defendants' contentions separately to determine whether defendants have presented sufficient evidence to warrant the submission of the counterclaim to the jury based upon these allegedly fraudulent representations.

[1] First, we consider defendants' contention that they made out a case of fraud based upon the bank's misrepresentation of who owned the property. While a misrepresentation regarding ownership is a representation relating to a material fact, the defendants have failed to offer any evidence from which a jury could find that they relied upon the representation to their detriment. The defendants received a fee simple title, the title for which they contracted, to the property. The fact that this title was delivered from someone other than the plaintiff does not serve to establish fraud on the part of the plaintiff.

[2] Next, plaintiff contends that the bank misrepresented the rental value of the property. Statements regarding past or present rents received from a property have frequently been held to

be representation of a material fact upon which a claim for fraud may be predicated if the other elements of the tort are present. 37 C.J.S. *Fraud* § 54. However, the evidence indicated that the defendants executed the note sued upon some sixteen months after learning of the bank's representation regarding the amount of rent which the property was producing was incorrect, thus, the evidence fails to show that the defendants relied upon this misrepresentation.

[3] Defendants also contend that the plaintiff misrepresented the amount of repairs which had been done on the property. While they have offered evidence that some of the properties were in need of repair, they also offered evidence that some repairs had been made upon the property. There is no evidence as to the value of these repairs, therefore, they have failed to show that the representation as to the value of the improvements was false. This contention is also subject to the same defect as the contention regarding the misrepresentation of the company's rental value, because the evidence shows that the defendants were aware of the property's state of repair when they signed the note upon which the plaintiff has sued.

[4] Finally, defendants rely upon the contention that the plaintiff defrauded them by promising to take property back if the defendants could not make a profit on the deal, and then refusing to honor this promise. The general rule is that an unfulfilled promise cannot be the basis for an action for fraud unless the promise is made with no intention to carry it out. *Pierce v. Insurance Co.*, 240 N.C. 567, 83 S.E. 2d 493 (1954). Our examination of the record reveals no evidence from which a jury could find that the plaintiff made the promise to take back the property with no intent to honor it.

For the above stated reasons the judgment of the trial court is

Affirmed.

Judges EAGLES and PARKER concur.