Tribike Transp., LLC v. Essick, 2022 NCBC 74.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

TRIBIKE TRANSPORT, LLC,

              Plaintiff,

v.

JOHN TAYLOR ESSICK;
CHRISTOPHER COSGROVE; and
KITZUMA CORP.,

              Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
22 CVS 1103

**ORDER AND OPINION
ON DEFENDANTS'
MOTION TO DISMISS**

1.     TriBike Transport, LLC handles logistics for triathletes and others who compete in cycling events around the world. In this case, it has sued two former employees, John Taylor Essick and Christopher Cosgrove, and their new, competing venture, Kitzuma Corporation. In short, TriBike asserts a variety of claims for unfair competition, largely based on the alleged misappropriation of its trade secrets and other confidential information. Essick, Cosgrove, and Kitzuma ("Defendants") have moved to dismiss all claims. (ECF No. 19.) For the following reasons, the Court **DENIES** their motion.

> *Spilman Thomas & Battle, PLLC, by Matthew W. Georgitis and Lee D. Denton, for Plaintiff TriBike Transport, LLC.*
>
> *Allen Stahl & Kilbourne, PLLC, by Derek J. Allen and Hanna Michalove, for Defendants John Taylor Essick, Christopher Cosgrove, and Kitzuma Corp.*

Conrad, Judge.

## I.
## BACKGROUND

2.     The Court does not make findings of fact on a motion to dismiss. The following background assumes that the allegations of the amended complaint are true.

3.     Founded in 2005, TriBike does business in the cycling industry. Many of its customers compete in triathlons and other cycling events. Of course, cyclists can't compete without their bicycles, and bicycles aren't easy to transport. TriBike helps take care of the logistics—picking up the athlete's bicycle, delivering it to the relevant event, and then returning it once the event is over. (*See* Am. Compl. ¶ 6, ECF No. 25.)

4.     Essick and Cosgrove are both former employees of TriBike. Essick became a member of TriBike in 2016 and served as Vice President. Cosgrove served as Vice President of Operations. (*See* Am. Compl. ¶¶ 7–10, 26.)

5.     In April 2020, TriBike terminated Essick's employment and removed his access to company computers and e-mail accounts. Over the next two months, the two sides negotiated the terms of Essick's departure. These negotiations resulted in a Separation Agreement concerning Essick's employment and a Redemption Agreement in which he sold his membership interest to TriBike's other members. Both agreements include confidentiality provisions that restrict Essick's ability to retain and use TriBike's confidential information. (*See* Am. Compl. ¶¶ 10–12, 16, 20, 21.)

6.     In June 2020, one of TriBike's founders, Marc Lauzon, began to develop a new business plan for the company. This plan, called the D2C plan, would allow TriBike "to pick up high volumes of bikes directly from manufacturers, refurbishers, and online retailers, and transport them—boxless, fully built, and ready to ride—directly to consumers." According to the amended complaint, the components of the D2C plan include special racking systems, comprehensive cost estimates, financial models and forecasts, a newly developed hub-based logistics model, and various other strategic considerations. (Am. Compl. ¶¶ 24, 25, 27.)

7.     At the outset, Lauzon approached Cosgrove in confidence to discuss the D2C plan and its development. On 12 June 2020, Lauzon asked Cosgrove to keep the plan confidential. Cosgrove promised that he would. As alleged, though, Cosgrove had already shared the information with Essick or intended to do so. Throughout the rest of June and part of July, Lauzen and Cosgrove (along with one or two others) worked to develop the D2C plan. (*See* Am. Compl. ¶¶ 26, 27, 30, 133.)

8.     Then, on 13 July 2020, Cosgrove resigned from TriBike. Around the same time, Essick and Cosgrove formed the company that would later become Kitzuma. By the end of 2020, Essick, Cosgrove, and Kitzuma were up and running. They issued a press release describing their new services to include "door to door box-free, ready to ride bike delivery." In less than a year, Kitzuma generated over $1.4 million in sales. According to TriBike, this success was possible only because Essick, Cosgrove, and Kitzuma improperly used the D2C plan as a competitive head start. (*See* Am. Compl. ¶¶ 33, 35, 38, 45–52.)

9. TriBike filed this suit in March 2022. It has asserted a host of claims based on allegations that Essick, Cosgrove, and Kitzuma are wrongfully using its trade secrets and confidential information. The amended complaint includes the following claims: breach of the Separation and Redemption Agreements (against Essick); misappropriation of trade secrets (against all Defendants); violations of N.C.G.S. § 75-1.1 (against all Defendants); common-law unfair competition (against all Defendants); tortious interference with contract (against Cosgrove and Kitzuma); breach of contract (against Cosgrove); tortious interference with contract (against Essick and Kitzuma); unjust enrichment (against all Defendants); fraud (against Cosgrove); and civil conspiracy (against all Defendants). There are also several remedial counts for constructive trust, punitive damages, and injunctive relief.

10. Defendants have moved to dismiss the amended complaint in its entirety. The Court held a hearing on 15 November 2022, at which all parties were represented by counsel. The motion is ripe for determination.

## II.
## ANALYSIS

11. A motion to dismiss for failure to state a claim "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). Dismissal is proper when "(1) the complaint on its face reveals that no law supports the claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted). In deciding the motion, the Court

must treat all well-pleaded allegations as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *See, e.g., Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019). The Court may also consider documents, such as contracts, that are the subject of the complaint. *See, e.g., McDonald v. Bank of N.Y. Mellon Tr. Co.*, 259 N.C. App. 582, 586 (2018).

A. <u>Misappropriation of Trade Secrets</u>

12. The Court begins with the claim for misappropriation of trade secrets. TriBike claims that the D2C plan is a trade secret and that Defendants misappropriated it. Defendants move to dismiss the claim on the grounds that the D2C plan is not protectable as a trade secret and that TriBike has not adequately alleged acts of misappropriation.

13. A trade secret is "business or technical information" that "[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable though independent development or reverse engineering by persons who can obtain economic value from its disclosure or use" and is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.C.G.S. § 66-152(3). Misappropriation is the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent," unless independently developed or obtained through other lawful means. *Id.* § 66-152(1).

14. Without citation, Defendants argue that the D2C plan consists of nothing more than publicly available information and is therefore not a trade secret. These factual assertions are not found in the amended complaint. The Court therefore cannot consider them under Rule 12(b)(6). *See Vitaform, Inc. v. Aeroflow, Inc.*, 2020

NCBC LEXIS 132, at *19–20 (N.C. Super. Ct. Nov. 4, 2020) (concluding that similar arguments were "more appropriately advanced upon the presentation of evidence at summary judgment").

15.    Moreover, the amended complaint identifies the various components of the D2C plan, including special racking systems, cost estimates, financial models, pricing and profitability estimates, and more.  It also alleges that the D2C plan is confidential, "unique to TriBike," and "not readily ascertainable or able to be readily derived from public information."  (Am. Compl. ¶¶ 27, 71, 72.)  These allegations compare favorably with those that have been held to satisfy Rule 12(b)(6) in other cases.  *See AYM Techs., LLC v. Rodgers*, 2018 NCBC LEXIS 14, at *37–39 (N.C. Super. Ct. Feb. 9, 2018) (collecting cases).

16.    TriBike's allegations of misappropriation also compare favorably.  As alleged, Cosgrove obtained access to the D2C plan, Cosgrove disclosed it to Essick and Kitzuma without TriBike's knowledge or consent, and Defendants used the D2C plan to jumpstart their own direct-to-consumer, boxless bicycle delivery service.  (*See* Am. Compl.  ¶¶ 45, 133.)   This is more than enough to state a claim for misappropriation.  *See, e.g., Strata Solar, LLC v. Naftel*, 2020 NCBC LEXIS 129, at *10–11 (N.C. Super. Ct. Oct. 29, 2020); *Mech. Sys. & Servs., Inc. v. Howard*, 2021 NCBC LEXIS 69, at *7 (N.C. Super. Ct. Aug. 11, 2021).

17.    Accordingly, the Court denies the motion to dismiss the claim for misappropriation of trade secrets.

B. Contract Claims

18. TriBike pleads two claims for breach of contract: one against Essick for breaching his Separation and Redemption Agreements;[1] and another against Cosgrove for breaching his promise to Lauzon to keep the D2C plan confidential. Likewise, TriBike pleads two parallel claims for tortious interference with contract: a claim that Cosgrove and Kitzuma induced Essick to breach the Separation and Redemption Agreements; and a second claim that Essick and Kitzuma induced Cosgrove to breach his promise to keep the D2C plan confidential.

19. A claim for breach of contract requires the existence of (1) a valid contract and (2) a breach of that contract's terms. *See Poor v. Hill*, 138 N.C. App. 19, 26 (2000). There are no heightened pleading requirements. *See AYM Techs.*, 2018 NCBC LEXIS 14, at \*53. Instead, the complaint need only "give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences intended to be proved showing that the pleader is entitled to relief." N.C. R. Civ. P. 8(a). Thus, "stating a claim for breach of contract is a relatively low bar." *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at \*11 (N.C. Super. Ct. June 19, 2019).

20. To state a claim for tortious interference with contract, the plaintiff must allege that a valid contract exists between it and a third person, and that the defendant knows of the contract, intentionally induced the third person not to

---

[1] In the amended complaint, TriBike asserts that Essick breached the confidentiality, nonsolicitation, and nondisparagement provisions of the Separation and Redemption Agreements. Defendants' motion addresses only the confidentiality provisions. And the nondisparagement claims were voluntarily dismissed before the hearing. (*See* Pl.'s Notice of Vol. Dismissal, ECF No. 132.)

perform the contract, did so without justification, and caused actual damage. *See United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661 (1988).

21. **Essick.** Defendants concede that the Separation and Redemption Agreements are valid contracts. They argue only that the amended complaint does not adequately allege a breach of either agreement's confidentiality provision. They point to allegations that TriBike blocked Essick's access to its computer systems at the time of his termination, preventing him from misappropriating confidential information. On that basis, Defendants seek to dismiss the claim for breach of contract against Essick and the related claim for tortious interference with contract against Cosgrove and Kitzuma.

22. This argument is unpersuasive. The amended complaint alleges that Essick worked for TriBike for about sixteen years, (*see* Am. Compl. ¶ 10), that he breached the agreements "by impermissibly using TriBike's confidential information, including its customer information, financial information, and business plans," (Am. Compl. ¶ 58), and that he misused TriBike's "customer lists, logistics models, pricing formulas, ideas, and the D2C Business Plan" and improperly disclosed that information to Cosgrove, Kitzuma, and others, (Am. Compl. ¶ 62). The Court must take these allegations as true. They are sufficient to state a claim for breach of contract.

23. Accordingly, the Court denies the motion to dismiss TriBike's claims for breach of contract against Essick and for tortious interference with contract against Cosgrove and Kitzuma.

24.     **Cosgrove.** Defendants seek to dismiss the claim for breach of contract against Cosgrove and the related claim for tortious interference with contract against Essick and Kitzuma. They argue that Cosgrove's promise to keep the D2C plan confidential was not a valid contract. It was a mere promise lacking consideration, Defendants contend, rather than a reciprocal agreement.

25.     But the amended complaint alleges that "TriBike agreed to provide Cosgrove with new confidential information concerning the D2C Business Plan *in exchange for* Cosgrove's agreement to hold this information confidential." (Am. Compl. ¶ 110 (emphasis added).) Taken as true, this allegation supports the existence of a mutual exchange of promises—to give access to confidential information in return for secrecy. As this Court has held, a promise to allow "access to new confidential information" may "constitute consideration for a non-disclosure agreement." *S. Fastening Sys. v. Grabber Constr. Prods.*, 2015 NCBC LEXIS 42, at *18 (N.C. Super Ct. Apr. 28, 2015). "It is unnecessary that the consideration be full or adequate. Any legal consideration will be sufficient to support the guaranty." *Gillespie v. De Witt*, 53 N.C. App. 252, 259 (1981). Thus, the Court cannot conclude from the face of the complaint that Cosgrove's promise is invalid for lack of consideration.

26.     Accordingly, the Court denies the motion to dismiss the claims for breach of contract against Cosgrove and for tortious interference with contract against Essick and Kitzuma. The Court need not address TriBike's alternative argument that Cosgrove's continued at-will employment was adequate consideration for his promise.

## C. Fraud

27. TriBike's fraud claim is based on the allegation that Cosgrove falsely promised to keep the D2C plan confidential. Defendants argue that Cosgrove's promise did not induce TriBike to disclose the D2C plan and that Cosgrove lacked intent to deceive.

28. A claim for fraud has five "essential elements": (1) false representation or concealment of a material fact; (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) that did in fact deceive, and (5) that resulted in damage to the injured party. *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17 (1992). The plaintiff's reliance on the fraudulent misrepresentation "must be reasonable." *Forbis v. Neal*, 361 N.C. 519, 527 (2007).

29. According to Defendants, Cosgrove's promise could not have induced Lauzon to disclose the D2C plan because he had already disclosed it. This argument rests on a slanted reading of the amended complaint. In the light most favorable to TriBike, the allegations show that Lauzon began to formulate the D2C plan in June 2020, that Lauzon approached Cosgrove in confidence about the unfinished plan at that time, that Cosgrove promised to keep the plan confidential as early as 12 June 2020, and that Lauzon and Cosgrove then developed the components of the plan throughout June and into July 2020. (*See* Am. Compl. ¶¶ 26, 27, 30, 31, 131, 132.) These allegations tend to show that Cosgrove's promise induced Lauzon to continue to share confidential aspects of the D2C plan as it was developed.[2]

---

[2] Defendants also argue that Cosgrove's promise could not have been fraudulent because Lauzon approached him about the D2C plan, rather than the other way around. Who

30. The amended complaint also adequately pleads intent to deceive. A plaintiff may plead intent generally. *See* N.C. R. Civ. P. 9(b). Here, TriBike has alleged that, by the time Cosgrove promised to keep the D2C plan confidential, he had already disclosed it to others or intended to do so in the future. (*See* Am. Compl. ¶ 133.) Although that allegation of intent is sufficient, the allegation that Cosgrove did not intend to keep his promise at the time he made it is also sufficient to plead intent to deceive. *See Pierce v. Am. Fidelity Fire Ins. Co.*, 240 N.C. 567, 571 (1954).

31. For these reasons, the Court denies the motion to dismiss the claim for fraud.

### D. Unjust Enrichment

32. TriBike asserts its claim for unjust enrichment against all Defendants. This claim is also based on Defendants' alleged misuse of the D2C plan. Defendants contend that Lauzon gratuitously conferred the D2C plan on Cosgrove, thus defeating the claim.

33. Unjust enrichment has five elements: (1) "one party must confer a benefit upon the other party"; (2) "the benefit must not have been conferred officiously"; (3) "the benefit must not be gratuitous"; (4) "the benefit must be measurable"; and (5) "the defendant must have consciously accepted the benefit." *JPMorgan Chase Bank, N.A. v. Browning*, 230 N.C. App. 537, 541–42 (2013) (citation and quotation marks omitted). "The recipient of a benefit voluntarily bestowed without solicitation

---

initiated contact, however, is immaterial. Fraud is fraud even when committed in response to an inquiry from another.

or inducement is not liable for their value." *Wright v. Wright*, 305 N.C. 345, 350 (1982) (citation and quotation marks omitted).

34. As discussed above, the amended complaint adequately alleges that Cosgrove fraudulently promised to keep the D2C plan confidential to gain access to new information shared by Lauzon. At the 12(b)(6) stage, these allegations are sufficient to state a claim for unjust enrichment. *See PDF Elec. & Supply Co., LLC v. Jacobsen*, 2020 NCBC LEXIS 103, at *30 (N.C. Super. Ct. Sept. 9, 2020) (concluding that allegations that employer disclosed confidential information to employee for the sole purpose of his job duties and that employee misused information to compete were "minimally sufficient to preclude dismissal").

35. In their reply brief, Defendants presented new arguments regarding the claim for unjust enrichment against Essick and Kitzuma. "[T]he Court may decline to consider issues or arguments raised by the moving party for the first time in a reply brief." BCR 7.7. Accordingly, in its discretion, the Court declines to consider these late arguments.

36. The Court denies the motion to dismiss the claim for unjust enrichment.

E. Unfair and Deceptive Practices and Common-Law Unfair Competition

37. TriBike asserts alternative claims for violations of section 75-1.1 and for common-law unfair competition. Because TriBike and Defendants agree that there is no appreciable difference between the two claims, the Court will address them together.

38. Section 75-1.1 "provides that unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are

declared unlawful." *White v. Thompson*, 364 N.C. 47, 51 (2010) (cleaned up). Acts that occur solely within one market participant—such as the internal affairs of a business—are not in or affecting commerce. *See id.* at 52.

39. Defendants contend that the alleged acts were not in or affecting commerce because Essick and Cosgrove were employees when they allegedly misappropriated the D2C plan. It is true that section 75-1.1 does not ordinarily apply to employment disputes. But the "mere existence" of an employment relationship does not bar the claim. *Dalton v. Camp*, 353 N.C. 647, 656 (2001); *see also, e.g.*, *Sara Lee Corp. v. Carter*, 351 N.C. 27, 34 (1999); *GE Betz, Inc. v. Conrad*, 231 N.C. App. 214, 237 (2013). Casting them in the light most favorable to TriBike, the allegations show that Essick and Cosgrove acquired trade secrets and confidential information during and after their employment, intended to use that information to create a competing business, and then actually competed in the marketplace using TriBike's trade secrets. (*See, e.g.*, Am. Compl. ¶¶ 45, 46, 49, 50, 79.) Thus, the amended complaint adequately alleges conduct in or affecting commerce.

40. Accordingly, the Court denies the motion to dismiss the claims for violations of section 75-1.1 and common-law unfair competition.

### F. Civil Conspiracy

41. Defendants argue that the claim for civil conspiracy is impermissibly vague. It is not. The amended complaint alleges the identity of the conspirators, the timeframe of the conspiracy, and its purpose. Nothing more is required. *See, e.g.*, *Lunsford v. ViaOne Servs., LLC*, 2020 NCBC LEXIS 111, at *17–18 (N.C. Super. Ct. Sept. 28, 2020) (collecting cases).

42. Defendants also argue that the conspiracy claim must be dismissed if the underlying substantive claims are dismissed. Having denied the motion to dismiss the underlying claims, the Court declines to dismiss the conspiracy claim.

## G. Remedial Claims

43. Finally, Defendants seek to dismiss the counts for preliminary and permanent injunction, constructive trust, and punitive damages. TriBike asks the Court to construe these remedies as part of its *prayer* for relief, rather than as *claims* for relief. The Court agrees and deems these counts not to be standalone claims. TriBike may pursue its remedies at the appropriate time and only in conjunction with its valid claims for relief.

## IV.
## CONCLUSION

44. For all these reasons, the Court **DENIES** Defendants' motion to dismiss the amended complaint.

**SO ORDERED**, this the 30th day of November, 2022.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
for Complex Business Cases