**Gunther FORSTMANN, Plaintiff,**

v.

**Robert G. CULP, Jr., and Culp, Inc., Defendants.**

**Civ. A. No. C–85–1014–G.**

United States District Court, M.D. North Carolina, Greensboro Division.

Nov. 28, 1986.

David M. Clark, Greensboro, N.C., for plaintiff.

David C. Wright, III and A. Ward McKeithen, Charlotte, N.C., for defendants.

## MEMORANDUM OPINION

GORDON, Senior District Judge:

This matter comes before the court on defendants' motion for summary judgment.

### STATEMENT OF FACTS

Gunther Forstmann (plaintiff) asserts several claims growing out of a meeting and conversation with Robert Culp, president of Culp, Inc. (defendants), on 1 March 1985. Plaintiff alleges that he initiated the meeting to discuss the possibility that defendant might purchase Baxter-Kelly, Inc., a textile business in Anderson, South Carolina. Plaintiff asserts that defendant agreed, at this meeting, to the following: (1) to pay plaintiff $2000 per week for two weeks to conduct a study and prepare a report on whether it would be viable for defendant to purchase Baxter-Kelly, (2) to hire plaintiff to manage Baxter-Kelly in the event that defendant decided to purchase that facility, and (3) to give plaintiff an ownership interest in Baxter-Kelly in the event that defendant decided to purchase the facility. Defendant agrees that plaintiff was hired for two weeks at $2000 per week to conduct a study of Baxter-Kelly and plaintiff admits that defendant has paid for this service. Defendant, however, denies plaintiff's other allegations. Plaintiff brings suit on the following legal theories: (1) breach of contract, (2) promissory estoppel, (3) quantum meruit, (4) fraud, and (5) RICO. Defendant moves for summary judgment on each of these claims.

### DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The summary judgment

mechanism thus allows courts to "smoke out if there is any case, *i.e.*, any genuine issue as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition." *Bland v. Norfolk & Southern Railroad Co.*, 406 F.2d 863, 865 (4th Cir.1969). The summary judgment standard, however, is strict; "the moving party ... has the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). *See also Thomas v. Petro-Wash*, 429 F.Supp. 808, 816 (M.D.N.C.1977) (noting that "the defendants must prove that the undisputed facts entitle them to summary judgment"). Yet, "the movant may discharge his burden by demonstrating that if the case went to trial there would be no competant evidence to support a judgment for his opponent." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 at 130 (1983). *See Celotex Corp. v. Catrett*, ––– U.S. –––, –––, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Anderson v. Liberty Lobby, Inc.*, ––– U.S. –––, –––, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986).

## I. CONTRACT CLAIM

■ It is a fundamental legal tenet that the law will subject no person to a contractual obligation unless the character of the obligation is definitely fixed by an express or implied agreement of the parties. *General Motors Corp. v. Keener Motors, Inc.*, 194 F.2d 669, 676 (6th Cir.1952). To be binding, an agreement must be definite and certain as to its terms and requirements and must spell out the essential commitments assented to by the parties. North Carolina law recognizes and follows these maxims regarding the degree of definiteness and certainty a promise must exhibit before it can form the basis of a contractual obligation. Accordingly, in the area of employment contracts, the longstanding North Carolina rule is that a personal service contract requires certainty as to the nature and extent of the services to be

performed, the place where and the person to whom services are to be rendered, and *the compensation to be paid* before a court will enforce the contract. *Humphrey v. Hill*, 55 N.C.App. 359, 361, 285 S.E.2d 293, 295 (1982) (citing *Croom v. Lumber Co.*, 182 N.C. 217, 108 S.E. 735 (1921)). *See* 53 Am.Jur.2d Master & Servant § 16 (an essential element of a binding contract of employment includes definiteness as to compensation).

In the present action, this court cannot enforce the alleged contract because the parties did not reach an agreement as to the salary defendant would pay to the plaintiff. The defendant vehemently denies that any agreement as to salary was reached:

> Q. Did you not, in fact, Mr. Culp, expressly or impliedly, tell Gunther Forstmann that if Baxter-Kelly were purchased as a result of his recommendations that, in fact, he would run the plant at a salary of $60,000.00 and would have an equity position?
>
> A. No, sir, Mr. Clark. That's a figment of his imagination.

Culp dep. p. 85. More importantly, plaintiff's account of the parties' discussion regarding compensation also clearly fails to demonstrate that the parties agreed as to the salary to be paid to Mr. Forstmann in that defendant did not assent to plaintiff's proposed salary:

> Mr. Culp asked me whether I could run that, which I assured him of. And he asked me what I would expect as a salary. I mentioned, at that time, $60,000.00 a year. Mr. Culp then said that was how much he was making. And I said, "That is not what I heard."
>
> And he smiled and said, "Well, the rest was all bonuses." And I told him I would be quite prepared to accept bonuses too.

Forstmann dep. p. 81. It is thus clear that plaintiff and defendant never reached a mutual understanding as to the compensation to be paid by defendant to plaintiff. There simply was no meeting of the minds.

Under these circumstances, summary judgment is proper.[1] The Supreme Court recently noted that "the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, — U.S. —, —, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). In this regard, the Court continued, the "standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, — U.S. —, —, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986)). In turn, Rule 50(a) mandates that the trial judge direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–35, 88 L.Ed. 239 (1943).

On the facts this case presents, defendant is entitled to judgment as a matter of law on plaintiff's contract claim because the plaintiff has failed to show an essential element of his case—the amount of compensation defendant was to pay plaintiff—with respect to which plaintiff has the burden of proof. The only evidence plaintiff offers of an agreement as to salary is the above quotation from plaintiff's own deposition and the only reasonable conclusion one can reach from this evidence is that the parties did not reach an agreement as to compensation. Accordingly, the court concludes that plaintiff's claim for breach of contract fails because the alleged contract lacks sufficient definiteness for a court to enforce.

The soundness of the rule requiring definiteness as to essential terms before a promise is enforceable as a contract becomes readily apparent when one views the situation presented by this case. The parties herein are, by their own admission, experienced in business. And their conduct illustrates that both parties know how to make a legally binding contract. The undisputed facts show that plaintiff and defendant entered into a contract whereby plaintiff would conduct a study and prepare a report on the status of Baxter-Kelly and defendant would pay plaintiff a fee of $2000.00 per week for two weeks. This contract is specific as to the nature and extent of the services to be performed, the compensation to be paid, and the duration of the contract. The specificity of the terms makes it evident that the parties intended to form a binding contract. In stark contrast, the alleged contract about which plaintiff complains herein establishes neither the compensation to be paid nor the duration of the contract. The lack of specificity as to material terms clearly signifies that the parties did not mutually agree to bind themselves in this particular instance.

Assuming arguendo that an agreement definite enough for a court to enforce existed between plaintiff and defendant, defendant's refusal to employ plaintiff would nonetheless be noncompensable. North Carolina adheres to the rule that where a contract of employment contains no provision as to duration, the contract is terminable at the option of the employer ("at will"), without regard to cause. *Nantz v. Employment Securities Commission*, 290 N.C. 473, 226 S.E.2d 340 (1976); *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E.2d 282, 79 A.L.R.3d 651 (1976); *Malever v. Kay Jewelry Co.*, 223 N.C. 148, 25 S.E.2d 436 (1943). Indeed, even where the parties enter into a contract for "permanent employment," the contract is an indefinite general hiring terminable at will in the absence of an additional expression as to duration. *Roberts v. Wake Forest University*, 55 N.C.App. 430, 286 S.E.2d 120, *review denied*, 305 N.C. 586, 292 S.E.2d 571

---

1. For as the North Carolina Court of Appeals recently stated, "[t]o constitute a valid contract, the parties must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Gregory v. Perdue, Inc.*, 47 N.C.App. 655, 267 S.E.2d 584, 586 (1980).

(1982). The alleged contract herein was clearly at will as the plaintiff admits in his deposition:

Q. No discussion or mention of length of employment?

A. Not that I recall.

Forstmann dep. p. 85. Accordingly, defendant did not incur an obligation to allow plaintiff to work for even one day. The court thus holds, in the alternative, that plaintiff's contract claim fails because any contract formed was terminable at the will of the employer.

Plaintiff contends that the "at will" rule in North Carolina is subject to a qualification that such a contract may not be unilaterally terminated until it has been in effect for a reasonable time is incorrect. The court disagrees. North Carolina case law simply does not state that proposition in regard to contracts of employment[2].

■ Plaintiff correctly notes, however, that if an employee gives some additional ("special") consideration in addition to the usual obligation of service, the law may transform an employment contract for indefinite duration into a contract for as long as services are satisfactorily performed. *Tuttle v. Kernersville Lumber Co.*, 263 N.C. 216, 139 S.E.2d 249 (1964); *Walker v. Westinghouse Electric Corp.*, 77 N.C.App. 253, 335 S.E.2d 79 (1985), *review denied*, 315 N.C. 597, 341 S.E.2d 39 (1986). Clearly, however, plaintiff has not given any additional consideration. Consideration ex-

ists if the promisee, in return for the promise, does anything which he is not already legally bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not. *Albemarle Educational Foundation, Inc. v. Basnight,* 4 N.C.App. 652, 167 S.E.2d 486 (1969). Plaintiff argues that he supplied additional consideration in that "[d]efendants received the benefit of a transaction worth millions of dollars through the services of plaintiff who was solely responsible for reopening Culp, Inc's interest in the acquisition of Baxter/Kelly and who was prevented from timely efforts to market the facility elsewhere." Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment, pp. 19–20. But this argument fails to demonstrate additional consideration. Benefit to the promisor is not the test to determine if consideration exists. Moreover, plaintiff and defendant admittedly entered a contract whereby plaintiff was to study Baxter-Kelly for defendant and defendant was to pay plaintiff $2,000.00 per week for two weeks. Consideration does not exist where a person performs an action that the person is already legally obligated to perform (such as a contract). Finally, plaintiff's discontinuance of his efforts to interest other purchasers in Baxter-Kelly is not consideration. In order for an action to be consideration for a promise, the parties

---

**2.** Plaintiff cites two cases to support the proposition that North Carolina employment contracts of uncertain duration contain an implied term for a reasonable time: *Malever v. Kay Jewelry Co.*, 223 N.C. 148, 25 S.E.2d 436, 437 (1943) ("business usage or other circumstances appearing in the record" may be relevant considerations in giving duration to an employment contract which has no definite time stated) and *Humphrey v. Hill*, 55 N.C.App. 359, 285 S.E.2d 293 (1982) (court is "reluctant ... in the presence of some indication of duration" to hold a contract unenforcable because it fails to specify a term of employment). In these two cases, however, the respective courts did not imply a reasonable term in the employment contract under consideration. Rather, in both cases, the courts specifically applied the rule of terminability at will to dismiss the plaintiffs' cases as a matter of law. In addition, neither case explic-

itly or, indeed, even tacitly states the proposition for which they are cited; the cases simply do not hold that an employment contract of uncertain duration contains a term, implied by law, for a reasonable time. Rather these cases, if anything, suggest that the "at will" rule may not apply where the *parties* implied, in fact, a term through a business custom or by "some" other method of indicating duration.

This court is aware of the growing number of challenges mounted, in recent years, against the "at will" rule. *See* Annot., 12 A.L.R.4th 544 (1982). Whatever the merit of these challenges, it is the duty of this court to apply the law of North Carolina in this action, *see Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and it is concluded that North Carolina continues to adhere to the "at will" rule.

must have bargained for that action. *See* Restatement (Second) of Contracts § 71 (1981). The promisee must act in exchange for the promise. *Id.;* E. Farnsworth, Contracts § 2.2 (1982). "If [a] promisee takes some action subsequent to the promise ... that action is not bargained for and cannot be consideration for the promise if it was unsolicited by the promisor." E. Farnsworth, Contracts § 2.9 (1982). Plaintiff does not contend that the alleged contract obligated him to discontinue attempts to interest other purchasers in Baxter-Kelly. Indeed, plaintiff admits that he attempted to interest other purchasers in Baxter-Kelly less than one month after plaintiff's initial contact with defendant and before defendant purchased Baxter-Kelly. Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment, p. 9. Accordingly, the court denies plaintiff's plea that the court imply a term to the alleged contract by reason of plaintiff's giving of a "special" consideration.

In addition, because the alleged agreement in issue does not rise to the level of an enforceable contract, it is not necessary to decide the question of whether this agreement constituted a contract for the sale of securities rendered unenforcable for lack of a writing by N.C.G.S. § 25–8–319, the North Carolina Statute of Frauds.

## II. PROMISSORY ESTOPPEL

▇▇▇ The doctrine of promissory estoppel applies in cases where a promisee has not given consideration for a promise, but the promisee has reasonably relied, to his detriment, on a promise and injustice can be avoided only by enforcement of the promise. In such cases, promissory estoppel acts as a substitute for consideration and renders the promise enforceable. The key point is that promissory estoppel, if applicable, merely cures an absence of consideration. The doctrine does not operate to cure other defects in contract formation, such as lack of definiteness [3].

In the present case, the alleged contract is not defective on account of a lack of consideration. The employment promises alleged by the plaintiff, if proven, would satisfy the bargained for consideration requirement to contract formation. The alleged contract, rather, fails for a lack of definiteness and for failure to state a term. Promissory estoppel does not operate to provide definiteness to an otherwise indefinite contract. Nor does it operate to supply a term to a contract terminable at will. Such uses would be clear misapplications of the doctrine [4]. Rather, as stated, promissory estoppel merely acts as a substitute for consideration, where justice so requires, thereby rendering enforceable promises that are unenforceable under general contract law for lack of consideration. Accordingly, plaintiff's promissory estoppel claim fails as a matter of law.

Moreover, even if the doctrine of promissory estoppel as explained by the numerous commentators on contract law were applicable to the facts herein, the court would still hold that plaintiff's claim fails as a matter of law. While the North Carolina courts "have recognized the doctrine of promissory estoppel to some extent," this recognition has been quite limited. *Lee v. Paragon Group Contractors, Inc.,* 78 N.C. App. 334, 340, 337 S.E.2d 132, 136 (1985),

---

**3.** The Restatement 2d of Contracts, § 90 describes promissory estoppel:

A *promise* which the promisor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise.

Promissory estoppel is only important in those cases where it may be argued that the promisee has given no consideration to the promisor. In such cases, the promisse having changed his position, promissory estoppel is asserted as a substitute for consideration. *See* Simpson, Handbook of the Law of Contracts 118 (2d ed. 1965).

**4.** The court would further note, without deciding, that the facts before the court suggest that the alleged *promise* in this case is too indefinite to *"reasonably"* induce reliance on the part of the plaintiff. A definite promise must exist before promissory estoppel applies. As the name "promissory estoppel" suggests, the promisor is estopped from denying the promise.

*review denied,* 316 N.C. 195, 345 S.E.2d 383 (1986). Specifically, the North Carolina courts have refused to apply promissory estoppel in an action for the breach of an employment contract. *Tatum v. Brown,* 29 N.C.App. 504, 224 S.E.2d 698 (1976).[5] Inasmuch as this court is bound to follow the substantive law of North Carolina, the court is compelled to dismiss plaintiff's promissory estoppel claim.[6]

## III. QUANTUM MERUIT

Quasi-contractual obligations rest upon the equitable principle that the law shall not allow a person to enrich himself unjustly at the expense of another. *Root v. Allstate Ins. Co.,* 272 N.C. 580, 158 S.E.2d 829 (1968). A quasi-contract, sometimes termed an implied-in-law contract, is the obligation the law implies to prevent such unjust enrichment. A recovery in quantum meruit must rest upon an implied contract. *Burns v. Burns,* 4 N.C.App. 426, 167 S.E.2d 82 (1969). Accordingly, where one party renders nongratuitous services to another party, and the recipient knowingly and voluntarily accepts the services, the law implies a promise obligating the recipient to pay fair compensation for the services. *Carolina Helicopter Corp. v. Cutter Realty Co.,* 263 N.C. 139, 139 S.E.2d 362 (1964); *Johnson v. Sanders,* 260 N.C. 291, 132 S.E.2d 582 (1963).

A plaintiff cannot, however, maintain a quantum meruit claim where an en-forceable express contract covers the same subject matter. *Vetco Concrete Co. v. Troy Lumber Co.,* 256 N.C. 709, 124 S.E.2d 905 (1962); *Industrial and Textile Piping, Inc. v. Industrial Rigging Services, Inc.,* 69 N.C.App. 511, 317 S.E.2d 47, *review denied,* 312 N.C. 83, 321 S.E.2d 895 (1984). "It is only when parties do not expressly agree that the law interposes and raises a promise." *Vetco Concrete Co.,* 256 N.C. at 713, 124 S.E.2d at 908 (quoting 12 Am.Jur., Contracts, Section 7, page 505). In the case under consideration, plaintiff admits that the portion of the alleged contract whereby defendant was "to pay [plaintiff] $2000 per week for his investigation of Baxter/Kelly and report thereon obviously is divisible from that part of the agreement under which [plaintiff] was to have a significant management and ownership position in Baxter/Kelly if it were acquired." Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment at 27. The defendants also acknowledge the existence and validity of this portion of the contract. Furthermore, the parties agree that defendant has paid plaintiff the agreed $2000 per week for the two weeks during which plaintiff rendered services for defendant. Accordingly, as to the services rendered under this portion of the contract, the court holds that the express contract between the parties precludes any implied in law contract with reference to the same matter. *Id.*

---

5. In *Tatum,* defendant moved to dismiss plaintiff's claim for breach of contract and promissory estoppel. In viewing plaintiff's version of the facts as true as a court must on a motion to dismiss for failure to state a cause of action, the North Carolina Court of Appeals affirmed the trial court's order dismissing the action stating that the facts "give rise to no claim upon which relief can be granted." 224 S.E.2d at 698. The court reached this decision in the face of compelling facts. The plaintiff in *Tatum* alleged that she had been gainfully employed by an insurance company for six years earning $545 per month. In response to an advertisement, she applied for a position with the defendant which would pay her $625 per month. This position was to be permanent and a "long term' career. Defendant notified plaintiff that her application for employment had been accepted and directed plaintiff to give notice of termination to her present employer. Plaintiff gave notice. Ten days later, defendant terminated the employment before plaintiff ever started work. The court held the termination permissible under North Carolina's employment at will doctrine and further ruled that "the doctrine of promissory estoppel does not apply in this action for breach of employment contract." 224 S.E.2d at 699.

6. As the authors of a leading hornbook note, "even if all of the elements for a promissory estoppel are present the plaintiff will lose unless a given jurisdiction accepts promissory estoppel as a substitute for consideration under the facts of a particular case." J. Calamari & J. Perillo, The Law of Contracts § 6–7 p. 210 (2d ed. 1977).

Additionally, the doctrine of quantum meruit limits a plaintiff's recovery to the *reasonable value of the services* rendered by the plaintiff and accepted and appropriated by the defendant. *Ellis Jones, Inc. v. Western Waterproofing Co.,* 66 N.C.App. 641, 312 S.E.2d 215 (1984); *Freeman v. Sturdivant Development Co.,* 25 N.C.App. 56, 212 S.E.2d 190 (1975). *See* Plaintiff's Brief at 25. Here, plaintiff does not allege that he rendered any services to defendant other than the services rendered pursuant to the divisible portion of the alleged employment contract whereby defendant agreed to pay plaintiff $2000 per week to conduct a study of Baxter-Kelly. Hence, defendant in no way received any benefit incident to plaintiff's services other than the services the two week investigative contract entitled defendant to receive[7]. Plaintiff's claim for quantum meruit, therefore, fails as a matter of law.

## IV. FRAUD

■ Under North Carolina law, a plaintiff must show the following to prove actionable fraud: (1) that the defendant made a representation of a material past or present fact; (2) that the representation was false; (3) that it was made by the defendant with knowledge that it was false or made recklessly without regard to its truth; (4) that the defendant intended that the plaintiff rely on the representation; (5) that the plaintiff did reasonably rely on it; and (6) injury. *Johnson v. Phoenix Mutual Life Ins. Co.,* 300 N.C. 247, 266 S.E.2d 610 (1980); *Braun v. Glade Valley School, Inc.,* 77 N.C.App. 83, 87, 334 S.E.2d 404, 407 (1985). The general rule is that a plaintiff cannot predicate an action for fraud upon statements which are promissory in nature at the time they are made and which relate to future actions and conduct. *Pierce v. American Fidelity Fire Ins. Co.,* 240 N.C. 567, 83 S.E.2d 493 (1954). Thus, generally, fraud cannot be predicated upon the mere nonperformance of a promise or contractual obligation. *Williams v. Williams,* 220 N.C. 806, 18 S.E.2d 364 (1942); *Mesimer v. Stancil,* 52 N.C.App. 361, 278 S.E.2d 530 (1981). The courts have advanced the following rationales to support this rule: (1) a mere promise to perform an act in the future is not, in a legal sense, a representation or statement of existing or past fact and the mere failure to perform it does not change its character; (2) a promise to do something in the future cannot, from its nature, be true or false at the time when it is made and the failure to make it good is merely a breach of contract which must be remedied by an action on the contract, if it all; and (3) if mere promises were actionable as fraud, no one could, without making himself potentially liable for damages, innocently and in good faith make a promise and then change his mind. *See* 37 Am.Jur.2d *Fraud and Deceit* §§ 60–63 (1968 and Supp.1986). Some courts, however, draw a distinction whereby the representation relating to a party's intentions (such as "I intend to hire you") is, under some circumstances, held to be a statement as to a material existing fact. Where it appears that a promisor makes a representation of future intent and, at the time of making the representation, has no intention of complying therewith, the state of mind of the promisor is a subsisting fact such as will support an ac-

---

**7.** Plaintiff opines that "defendant's argument that their severable agreement to pay the plaintiff $4,000 ... satisfies their legal obligation to the plaintiff for benefits bestowed in excess of $4 million is outrageous on its face." Plaintiff's opinion, in this instance, borders on frivolity. First and foremost, in the absence of outstanding circumstances, the law does not inquire into the adequacy of consideration. Second, plaintiff simply did not bestow $4 million worth of services on defendant. That plaintiff conducted a valuable study is not to be denied, but the fact that defendant *purchased* a plant worth $4 million dollars in partial reliance on plaintiff's study in no way reasonably leads to the conclusion that plaintiff's services are suddenly transformed from being worth $2000 per week, a sizeable fee, to $2 million per week. Although such an argument may, somehow, have a surface emotional appeal, it does not have a reasonable factual basis and clearly has no legal basis.

tion in fraud. *Kent v. Humphries*, 50 N.C. App. 580, 275 S.E.2d 176, *modified on other grounds*, 303 N.C. 675, 281 S.E.2d 43 (1981).

Within the purview of these general rules is the situation where an employer makes a misrepresentation as to the prospect or duration of employment. The courts are split as to whether a promise to employ, coupled with a present intent by the employer not to employ, constitutes actionable fraud. *See* 37 Am.Jur.2d *Fraud and Deceit* §§ 63, 65 (1968 and Supp.1986); Annot., 24 A.L.R.3d 1412 (1969 and Supp. 1986). The emerging rule, according to the commentators, is that the stated situation does create a cause of action for fraud. North Carolina claims to adhere to this rule, *Braun*, 77 N.C.App. at 87, 334 S.E.2d at 407, and plaintiff argues that the rule is applicable to the case under consideration in that defendant promised to hire plaintiff and that defendant, at the time of making the alleged promise, had no intention of employing plaintiff.[8]

The court agrees that plaintiff states a cause of action under this rule and denies defendant's motion for summary judgment on the issue of fraud. The question of whether a representation was made by the person charged with fraud is one of fact. Similarly, ambiguity in a representation presents questions of fact for determination by the jury as to the meaning of the statement, and the meaning which the person making it intended it should convey to the person to whom it was made. *See* 37 Am.Jur.2d *Fraud and Deceit* §§ 19, 44 (1968 & Supp.1986).

## V. RICO

■ The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*, makes it "unlawful for any person through a pattern of racketeering

---

**8.** The North Carolina courts have not applied this rule—whereby a future promise made with a present intent not to perform can satisfy the "material past or present fact" requirement—in the employment context. The North Carolina Court of Appeals, however, cited the rule with approval in *Braun*, an employment case. The court's refusal to find fraud in *Braun* appears to have been based on a finding that plaintiff failed to plead the elements of fraud with particularity rather than a refusal to apply the aforementioned rule in an employment case. 334 S.E.2d at 407. *See Rosenthal v. Perkins*, 42 N.C.App. 449, 452, 257 S.E.2d 63, 65 (1979) ("plaintiff must allege all material facts and circumstances constituting the fraud with particularity"). The North Carolina courts have applied the rule in other contexts. *See, e.g., Ferguson v. Ferguson*, 55 N.C.App. 341, 345, 285 S.E.2d 288, 291, *review denied*, 306 N.C. 383, 294 S.E.2d 207 (1982). In addition, many other jurisdictions are in accord with the North Carolina rule. *See* Annot., 24 A.L.R.3d 1412 (1969 & Supp.1986).

The rationale the courts have invoked to justify adoption of this rule is confusing. A court will start from the premise that a person's state of mind (i.e. scienter), in regard to whether that person intends to fulfill a promise, is a question of fact for the jury. The court will then, presumedly, state the converse of this premise: state of mind is a question of fact for the jury and, thus, proof of a person's state of mind at any given moment is a fact just as is the existence of any other thing. *See, e.g., Lamm v. Crumpler*, 240 N.C. 35, 44, 81 S.E.2d 138, 145 (1954). Proof of a person's present state of mind thus equals proof of an existing fact. What the courts fail to state is the result that necessarily follows in applying the rule derived from this somewhat circular reasoning process: the rule eviscerates the maxim that a future promise cannot be the basis for an action in fraud. A plaintiff must prove, in every fraud case, that the defendant had scienter, i.e. that defendant made a false representation and that defendant made this representation with knowledge that it was false or with reckless disregard for its truth. Since a plaintiff must in every case prove that defendant knew the representation—be it a representation of past fact or future promise—to be false when made, a plaintiff who can prove this scienter requirement will necessarily be able to prove that a defendant made any future promise with a present intention not to perform. The idea is thus that the promisor "presently" intends (a present fact) not to perform a promise in the future. This interpretation plainly makes future promises actionable as fraud and effectively swallows the rule that a promise to do something in the future cannot be the basis for an action in fraud.

The court's intent in commenting on this rule is not to comment on the propriety of the rule. Rather this court deems it prudent to make explicit the law and thereby, it is hoped, avoid the litigation generated by the incorrect expression of the law in terms of a rule and an exception.

activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Furthermore, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962. 18 U.S.C. § 1961 defines "racketeering activity," among other things, to include mail fraud under 18 U.S.C. § 1341. Plaintiff claims that defendant committed acts constituting mail fraud in violation of the RICO Act. This court disagrees because even if defendant committed acts of mail fraud, defendant did not engage in a "pattern" of mail fraud in violation of the RICO Act.

In *Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court opined that the "extraordinary uses to which the civil RICO has been put appear to be primarily the result of ... the failure of Congress and the courts to develop a meaningful concept of 'pattern.'" 105 S.Ct. at 3287. The Court explained that, although a pattern "requires at least two acts of racketeering activity ... two of anything do not generally constitute a pattern." *Id.*, 105 S.Ct. at 3285 n. 14. Rather, the Court stated, "it is continuity *plus* relationship which combines to produce a pattern." *Id.* (emphasis supplied).

In attempting to interpret the language of *Sedima* and other Supreme Court opinions concerning RICO, "the general consensus among the courts has been that *Sedima's* continuity element requires that the predicate racketeering acts alleged in the Complaint must have occurred in different criminal episodes." *Frankart Distributors, Inc. v. RMR Advertising*, 632 F.Supp. 1198, 1200 (S.D.N.Y.1986).[9] Indeed, even prior to *Sedima* the Fourth Circuit expressed its own "doubt that Congress ever contemplated the extension of the RICO statute to include ... a set of closely related wire fraud and mail fraud claims essentially representing subdivisions of a single on-going illegal act." *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1189, 68 A.L.R.Fed. 783 (4th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

The holdings of these cases logically follow from *Sedima's* requirement of relatedness *and* continuity to establish a pattern of racketeering activity. If two or three acts pursuant to the same episode (i.e. "related" acts) were sufficient to make out a "pattern", the "continuity" requirement of *Sedima* would be meaningless. Moreover, this interpretation follows the Supreme Court's admonition that "[i]n determining the scope of the [RICO] statute, [the court] must look first to its language," *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981), and assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Russello v. United States*, 464 U.S. 16, 21, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983). A "pattern" in common parlance is "a representative instance" or "a typical example." Webster's Third New International Dictionary (1981). In addition, under Civil Rights law, a "pattern" of

---

9. *See, e.g., Lipin Enterprises, Inc. v. Lee*, 803 F.2d 322, 324 (7th Cir.1986); *Superior Oil Co. v. Fulmer*, 785 F.2d 252, 254–57 (8th Cir.1986); *Madden v. Gluck*, 636 F.Supp. 463, 465 (E.D.Mo. 1986) (no pattern where "predicate acts of mail and wire fraud constitute subdivisions of one "fraudulent sceme"); *Soper v. Simmons Intern., Ltd.*, 632 F.Supp. 244, 253–54 (S.D.N.Y.1986); *Modern Settings, Inc. v. Prudential-Bache Securities, Inc.*, 629 F.Supp. 860, 864 (S.D.N.Y.1986); *Allington v. Carpenter*, 619 F.Supp. 474, 478 (C.D.Cal.1985) ("to show continuity of racketeering activity ... the predicate acts must have occurred in different criminal episodes"); *North Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 831 (N.D.Ill.1985) (pattern means "repeated criminal *activity*, not merely repeated acts to carry out the *same* criminal activity"). *But see, e.g., R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350 (5th Cir.1985).

activity means more than an isolated or accidental instance of conduct, it means an intentional, regular, or repeated violation of rights. *United States v. Hunter*, 459 F.2d 205, 217 (4th Cir.1972) (interpreting the Civil Rights Act of 1964). Accordingly, to show a RICO violation, a plaintiff needs to show that the defendant typically (i.e. engages in a pattern of) engages in illegal conduct.[10]

*Soper v. Simmons Intern., Ltd.*, 632 F.Supp. 244, 248–49 (S.D.N.Y.1986) applies the *Sedima* standard to facts markedly similar to the facts before this court. In *Soper*, the plaintiffs alleged that they had put together a major purchase agreement pursuant to a promissory misrepresentation that they would receive a 10% commission. Just as in this case, the plaintiffs alleged that the initial fraudulent promise was oral, but that subsequent instances of "mail fraud" occureed to "lull the plaintiffs into a false sense of security, postpone discovery, and insure inaction." 632 F.Supp. at 248. The Court granted summary judgment to the defendants because "an isolated criminal episode, even if it is accomplished through a number of fraudulent acts, [does not evidence] a threat of continuing activity." *Id.*

Plaintiff herein clearly has failed to demonstrate that defendant engaged in the extent of activity necessary to constitute a "pattern" of racketeering activity that 18 U.S.C. § 1962 requires for a RICO violation.[11] Plaintiff has not offered any evidence of defendant's racketeering activities other than three claimed instances of mail fraud, all of which are related to the same alleged fraudulent act. Stated simply, continuity is lacking here. There is no pattern of racketeering activity in the events surrounding the purchase of this single business (Baxter-Kelly), regardless of the number of allegedly fraudulent mailings defendant utilized to consummate the purchase. Accordingly, it is concluded that plaintiff's RICO claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that defendant's motion for summary judgment on plaintiff's breach of contract, promissory estoppel, quantum meruit, and RICO claims be, and the same hereby are, GRANTED.

IT IS FURTHER ORDERED, however, that defendant's motion for summary judgment on plaintiff's fraud claim be, and the same hereby is, DENIED.

---

10. The Supreme Court has tacitly noted the same thought. In footnote 14 of the *Sedima* opinion, 105 S.Ct. 3275, 3285 n. 14 (1985), the Court opines that "[t]he implication [of the § 1961(5)'s requirement of 'at least' two acts of racketeering activity] is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a 'pattern.'"

11. Federal Rule of Civil Procedure 56(e) requires a plaintiff, in opposition to a defendant's motion for summary judgment, to "set forth specific facts showing that there is a genuine issue for trial." Plaintiff has failed to set forth any facts showing that the defendant has engaged in any racketeering activity additional to the racketeering activity plaintiff alleges occurred in this case. Because of this lack of evidence, there exists no genuine issue of fact for trial and, thus, the court awards judgment as a matter of law to defendant.