Winthrop C. CONDICT and Elsie E. Condict, Plaintiffs-Appellants,

v.

Alden Revelle CONDICT, Karen K. Condict, Leland Thomas Grieve, Kermit Brown, John MacPherson, James W. Hearne, Keith Schafer, Sharen Schafer, Ted Jenkins, Walter Junior Leavelle, Garland Bartlett, Sr., and Garland Bartlett, Jr., Defendants-Appellees.[*]

No. 85–2001.

United States Court of Appeals, Tenth Circuit.

March 25, 1987.

---

* This case was formerly published at 815 F.2d 579. Republication was required because of inadvertent omission of a portion of footnote 3.

Herbert K. Doby of Elletson, Doby & Felde, Cheyenne, Wyo., for plaintiffs-appellants.

Randall R. Steichen (Raymond J. Turner, with him on the brief) of Sherman & Howard, Denver, Colo., for Alden Revelle Condict, Karen K. Condict, Keith Schafer, Sharen Schafer, Ted Jenkins, Garland Bartlett, Sr., Garland Bartlett, Jr., and James W. Hearne, defendants-appellees.

Blair J. Trautwein of Hathaway, Speight & Kunz, Cheyenne, Wyo. (Kermit C. Brown of Brown & Davidson, Rollins, Wyo., with him on the brief), for Leland Thomas Grieve and Kermit C. Brown, defendants-appellees.

James A. Applegate of Hirst & Applegate, Cheyenne, Wyo., for John MacPherson, defendant-appellee.

Robert A. Van Vooren (of counsel) of Lane & Waterman, Davenport, Iowa, for James W. Hearne, defendant-appellee.

Before HOLLOWAY, Chief Judge, and BALDOCK and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This case represents an effort to fit a family dispute over a family ranching operation into the RICO mold. The district court held that it didn't fit and entered summary judgment on June 5, 1985, for the defendants on the RICO claim and also dismissed a pendant claim based on common law fraud, deceit, and misrepresentation. We see no fit either, and on that basis we affirm.

The Condict ranch properties at one time occupied approximately 26,000 acres in Carbon County, Wyoming, and ranching operations were begun in about 1885 by Winthrop C. Condict. His son, Winthrop C. Condict II, ran the ranch until his death in 1955. The will of Winthrop C. Condict II distributed the ranch property as follows: one-half interest to his wife, Aurilla, and one-sixth interests to each of his three children, Alden Condict, Winthrop C. Condict III, and Maysel Condict Beales. Thereafter the Condict Ranch was operated under a general partnership agreement by Aurilla Condict, the surviving widow; Alden Condict, a surviving son; Winthrop C. Condict III, another surviving son; and the latter's wife, Elsie Condict.

During the 1970's and the early 1980's a bitter family quarrel developed over the ranching operations, with Winthrop C. Condict III and his wife, Elsie, on one side, and Winthrop's mother, Aurilla, and his brother, Alden, on the other side. In a setting of constant disagreement and continual family dispute over the ranch and its operation, Alden Condict and his mother, now deceased, brought an action in 1982 in the state district court in Carbon County, Wyoming, seeking partition of the ranch realty,

dissolution of the partnership, an accounting, appointment of a receiver and damages, including $500,000 in punitive damages. Winthrop C. Condict III and his wife, Elsie, defendants in the state partition proceeding, filed a counterclaim alleging that Winthrop's brother, Alden, and his mother, Aurilla, were guilty of fraud, concealment of assets, misappropriation of assets, waste, and sought damages, both compensatory and punitive.

On November 23, 1982, a Wyoming state judge dissolved the partnership and, subsequently, a receiver was appointed to operate the ranch. The ranch properties later were divided temporarily by the state court, pursuant to stipulation, on a "north-south" split, using Wyoming Highway 130 as the dividing line. Although the state court proceedings have been tortuous, we are now advised that they are drawing to a close. As indicated, the general partnership was dissolved, a receiver has been operating the ranch and his reports have been approved. The realty has been divided. And, beginning on October 8, 1985, the state court had a 10–week trial on the accounting phase of the dispute. However, we have not been advised as to whether the state court has ruled on the accounting matter.

In any event, on October 30, 1984, Winthrop C. Condict III and his wife, Elsie, filed the instant action in the United States District Court for the District of Nebraska. The first claim for relief was a RICO claim based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (1982 and Supp. III 1985). The second claim for relief was based on common law fraud, deceit, and misrepresentation. There are twelve named defendants. They are: Alden Condict and his wife, Karen; Sharen Schafer, Karen's twin sister, and Sharen's husband, Keith Schafer, both Colorado ranchers; Leland Grieve, the receiver for Condict Ranches; Kermit Brown, court appointed counsel for the receiver; John MacPherson, a Wyoming attorney who represented Alden and Aurilla Condict in the state partition proceeding; James Hearne, a certified public accountant in Cheyenne, Wyoming, who from 1979 to 1983 prepared tax returns for the partnership; Ted Jenkins and Walter Junior Leavelle, referred to in the complaint as "thugs," in the employ of Alden Condict; and Garland Bartlett, Sr. and Garland Bartlett, Jr., also employees of Alden Condict, but not described as "thugs," although they, according to the complaint, "beat up and intimidated Win and Elsie Condict."

The several defendants filed motions in the RICO proceeding in the United States District Court for the District of Nebraska, including a motion for change of venue pursuant to 28 U.S.C. § 1404(a). This latter motion was granted, and the case was transferred to the United States District Court for the District of Wyoming. Thereafter, the Honorable Ewing T. Kerr, a senior judge for the United States District Court for the District of Wyoming, heard defendants' motions to dismiss or for summary judgment. Judge Kerr granted these motions and dismissed both of plaintiffs' claims. Plaintiffs appeal such dismissal. We affirm.

As stated, the several defendants variously filed motions to dismiss under Fed.R. Civ.P. 12(b), and, in the alternative, motions for summary judgment under Rule 56. The district court apparently did consider matters outside the four corners of the complaint, and accordingly, in a technical sense, granted summary judgment for the defendants. We agree that under the circumstances there is no genuine issue of fact and that judgment for the defendants, whether it be on the basis of Rule 12(b) or 56, was appropriate.

According to the complaint, the gist of plaintiffs' claim is that the defendants conspired to "seize control of the Condict Ranches, a ten million dollar plus ranching operation which had previously been run as a partnership by Aurilla Condict [the mother], her sons Win and Alden, and Win's wife, Elsie Condict." The complaint was filed specifically under 18 U.S.C. § 1964(c). In support of their RICO claim, the plaintiffs alleged that the defendants were

guilty of fraud, consisting "of the previously mentioned conduct, including but not limited to Alden and Karen Condict's attempts to wrongfully deprive Win and Elsie Condict of their rightful share of partnership income and to wrongfully impose upon them an inappropriate share of the partnership burdens. Further, the remaining principal defendants—Hearne, Grieve, Brown, MacPherson—were pulled into the original conspiracy to cover-up the original wrongs, for their own profit, and to drive Win and Elsie from the ranching business."

It was further alleged that "[e]ach defendant herein has engaged in 'racketeering activity' as that phrase is defined by 18 U.S.C. Section 1961(1)(B) in that he or she has engaged in wrongful conduct, as set forth herein, in violation of Title 18 of United States Code, Section 1341 (relating to mail fraud), and Section 1343 (relating to wire fraud)." And, in the same vein, it was alleged in the complaint that "[s]aid racketeering activity under section 1961(1) constituted a pattern under section 1961(5) in that, since October 15, 1970, defendants and their conspiracy utilized both the mails and wires on more than two occasions each during the past ten years in furtherance of the scheme described herein."[1] Finally, in support of their RICO claim, the plaintiffs alleged that:

By virtue of the operation of their fraudulent and conspiratorial schemes, and acting with knowledge of functionally identical and consciously parallel fraud by defendants corrupted the Condict Ranches which is an "enterprise", as that term is defined by 18 U.S.C. Section 1964(4).[2]

The connection between the defendants' pattern of racketeering activity and the enterprise is that the defendants' scheme to defraud was designed to wrongfully acquire plaintiffs' interest in the ranch, to make plaintiffs pay too much support for the ranch and to cover up previous fraud by Alden and Karen Condict.

The second claim for relief was a pendant claim for common law fraud, deceit and misrepresentation.

By way of relief, the plaintiffs sought, both preliminarily and permanently, to enjoin the defendants from their unlawful acts, treble damages, restitution, together with costs and attorneys' fees.

The district court in dismissing the action and entering judgment for the defendants held that the complaint failed to state a claim upon which relief could be granted. Specifically, the district court held that the complaint failed to allege the following: (1) that activities of the defendants were in furtherance of a tie to organized crime or with criminal activities of an organized nature; (2) that the defendants, or any of them, have been convicted of the predicate acts of mail or wire fraud upon which the RICO claim is founded; (3) that the plaintiffs suffered a "distinct RICO injury"; and (4) that the predicate acts of mail and wire fraud were not pleaded with sufficient particularity. Further, the district court concluded that the Condict Ranch partnership is not an "enterprise" within the meaning of 18 U.S.C. § 1962. Having dismissed the RICO claim, the district court also dismissed the second claim for common law fraud, deceit and misrepresentation.

About one month after the district court entered judgment in the instant case the Supreme Court in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) held that in a RICO proceeding based on 18 U.S.C. § 1962(c) there is no requirement that a private action can proceed only against a defendant who has already been convicted of a predicate act or of a RICO violation and, fur-

---

**1.** More specifically, it was alleged that Alden Condict utilized the "wires" more than twice to arrange the sale of hay in the summer of 1983 and that defendants Grieve, Brown, and MacPherson "repeatedly used the mails to submit court documents and bills."

**2.** Plaintiffs mistakenly cited 18 U.S.C. § 1964(4) as defining "enterprise"; the term is defined in 18 U.S.C. § 1961(4).

ther, that there is no requirement that the plaintiff in such private action suffer a "racketeering injury" as opposed to an injury resulting from the predicate acts themselves. Recognizing *Sedima*, the defendants on appeal concede that certain, though not all, of the reasons given by the district court for its action are no longer viable. Specifically, the defendants concede that an actionable RICO claim need not allege a distinct RICO injury, nor need it allege that the defendants have already been indicted for, or convicted of, the predicate acts of mail or wire fraud, or that the defendants had ties to organized crime. However, the defendants do argue that under *Sedima* the plaintiffs must still allege that the defendants are conducting, or are participating in conducting, the affairs of an "enterprise," i.e., Condict Ranches, "through a pattern of racketeering activity." In this particular, the defendants argue that the complaint is fatally deficient, while plaintiffs argue that the complaint does measure up to *Sedima* and 18 U.S.C. § 1962(c).

The RICO claim in the instant case, as in *Sedima*, is based on alleged violations of 18 U.S.C. § 1962(c) and possibly 18 U.S.C. § 1962(d). However, any claim under § 1962(d) based on a conspiracy to violate the provisions of 18 U.S.C. § 1962(a), (b), or (c) must necessarily fall if the substantive claims are themselves deficient. Accordingly, our interest necessarily focuses on 18 U.S.C. § 1962(c). That section of the statute provides as follows:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

■ In *Sedima*, the Supreme Court held that a violation of 1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activities, and that

a plaintiff to state a claim under 1962(c) must allege each of these four elements. *Sedima*, 105 S.Ct. at 3285. Our narrowing issue then is whether, under the record before us, the plaintiffs have charged the defendants, or any of them, with the conduct, or participation in the conduct, of an enterprise, i.e., Condict Ranches, through a "pattern of racketeering activities." In this connection, our focus is specifically directed to the phrase "pattern of racketeering activities," and, even more particularly, to the one word "pattern." We believe the present complaint is deficient in these particulars, and that any evidentiary matter before the district court strengthens that conclusion. The gravamen of the present complaint is that the defendants engaged in common law fraud, and deceit and in the course of their conduct used the mails and wires more than twice. Such in our view does not make out a RICO claim under § 1962(c).

In *Sedima*, at p. 3285, note 14, the Supreme Court commented as follows:

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to

his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.*, at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. *Cf. Iannelli v. United States*, 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975).

A recent opinion of this court, *Torwest DBC, Inc. v. Dick, et al*, 810 F.2d 925 (10th Cir.1987), sheds considerable light on our present problem. In *Torwest,* two corporations, i.e., Vace and Great-West, formed a new corporation, Torwest, which would engage in the business of acquiring and developing real property. Great-West was to provide the financing for Torwest, and Vace was to find new properties for acquisition by Torwest. Thereafter the individual incorporators of Vace in a secret deal acquired realty in the name of a nominee corporation and then proceeded to "sell" the land to Torwest at an inflated price. When Torwest discovered the scheme, it brought suit against the individual incorporators of Vace, and their nominee corporation, Canusa Investments. Torwest asserted a RICO claim under the provisions of 18 U.S.C. § 1962(c), as well as pendant claims based on state law. The United States District Court for the District of Colorado dismissed Torwest's complaint under Rule 56, holding that allegations that directors of Vace secretly purchased realty and resold it at a substantial profit to Torwest did not allege the pattern of racketeering required to state a claim under 1962(c), there being only one scheme, one result, one set of participants, one victim, one method of commission, and thus, no continuity and no pattern of racketeering activity. *Torwest DBC, Inc. v. Dick, et al,* 628 F.Supp. 163, 165–66 (D.Colo.1986), *aff'd,* 810 F.2d 925 (10th Cir.1987).

On appeal, we affirmed the judgment entered by the district court in *Torwest.* In so doing, we commented as follows:

> In this case, the court and the parties assumed for purposes of the court's ruling that defendants engaged in numerous racketeering acts. It is clear that when, as here, the acts are part of a common fraudulent scheme, they satisfy the relationship requirement of *Sedima. See, e.g., Superior Oil Co. v. Fulmer,* 785 F.2d 252 (8th Cir.1986). However, to establish a RICO pattern, a plaintiff must also demonstrate continuity, that is, "the threat of continuing activity." *Sedima,* 105 S.Ct. at 3285 n. 14. This element is derived from RICO's legislative history, which indicates that RICO does not apply to "sporadic activity" or to the "isolated offender". *Id.*

> The continuity requirement has been the source of considerable difficulty. Courts generally agree that to make an adequate showing of continuity under *Sedima,* a plaintiff must demonstrate some facts from which at least a threat of ongoing illegal conduct may be inferred.[3] A scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished. Courts that have considered a RICO claim grounded on this type of scheme have therefore required some additional evidence showing that the scheme was not an isolated occurrence. *See, e.g., Lipin Enters. Inc. v. Lee,* 803 F.2d 322, 324 (7th Cir.1986) (acts to defraud one victim one time insufficient in absence of show-

ing of other victims or other frauds). A more difficult question is presented when the RICO claim is based on one scheme involving one victim, but the plan contemplates open-ended fraudulent activity and does not have a single goal that, when achieved, will bring the activity to an end. Some courts have found that such an ongoing scheme is itself sufficient to satisfy the continuity element of a RICO pattern. *See, e.g., Morgan v. Bank of Waukegan,* 804 F.2d 970, 976 (7th Cir.1986); *see also Illinois Dept. of Revenue v. Phillips,* 771 F.2d 312 (7th Cir.1985). Other courts may require additional proof showing that the defendants have engaged in similar activity in the past, or have been involved in other criminal activity, or pose a threat of similar activity in the future. *See, e.g., Superior Oil Co.,* 785 F.2d at 257.

---

[3] "A notable exception to the continuity requirement is the case of *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350 (5th Cir.1985), in which the court did not address the issue of continuity and held that a pattern could be established solely on the basis of related illegal acts. *R.A. G.S.* has been criticized for its failure to heed the Supreme Court's discussion in *Sedima, see, e.g., Papagiannis v. Pontikis,* 108 F.R.D. 177, 179 n. 3 (N.D.Ill.1985), and we do not find it persuasive."

*Torwest DBC, Inc.,* at 928–29.

Based on our understanding of *Sedima,* and our pronouncement in *Torwest,* we believe that the present complaint does not, and cannot under the admitted facts, meet the "continuity requirement" commented on in *Torwest* or the "conduct of an enterprise through a pattern of racketeering activities" requirement of § 1962(c).[3] Rather, this is but an unsuccessful effort to dress a garden-variety fraud and deceit case in RICO clothing.

 Certain of the defendants argue in this court that they are entitled to attorney's fees under Fed.R.Civ.P. 11. A matter of this sort should be considered and ruled on initially by the district court.

Judgment affirmed.

---

**3.** Other courts have interpreted the Supreme Court's *Sedima* discussion on pattern in a similar fashion. As the Eighth Circuit stated: [P]roof of a "pattern of racketeering activity" "requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." *Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986), quoting *Sedima,* (isolated fraudulent effort, implemented by several fraudulent acts, insufficient to prove "continuity" required to form pattern). Reaffirming that position in an even more recent case, the Eighth Circuit in *Holmberg v. Morrisette,* 800 F.2d 205 (8th Cir. 1986), reversed a lower court finding of liability on a RICO claim and held that "one scheme" did not constitute "the continuity necessary to form a 'pattern' of racketeering activity." *Id.* at 210. The Ninth Circuit held that an "isolated event" did not establish the "threat of continuing activity" and therefore did not meet the requirement of a showing of "continuity plus relationship which combines to produce a pattern." *Schreiber Distributing v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1399 (9th Cir.1986), citing *Sedima.* In *Lipin Enterprises Inc. v. Lee,* 803 F.2d 322 (7th Cir.1986), the Seventh Circuit, affirming a lower court's dismissal for failure to allege a pattern, noted that much more than two acts must be shown in order to demonstrate a pattern. "The separate racketeering acts must reflect both 'continuity' and 'relatedness' in order to constitute a pattern." *Id.* at 323, citing *Sedima.* For similar reasoning by lower courts, *see also, Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828 (D.C.Ill.1985) (noting that although footnote 14 of the *Sedima* decision is *dicta,* "its message was both plain and deliberate. Lower courts concerned about RICO's expansive potential would be best advised to focus on the hitherto largely ignored 'pattern' concept." *Id.* at 832; *Forstmann v. Culp,* 648 F.Supp. 1379 (M.D.N.C.1986) ("the general consensus among the courts has been that *Sedima's* continuity element requires that the predicate racketeering acts alleged in the Complaint must have occurred in different criminal episodes," *id.* at 1388, quoting *Frankart Distributors, Inc. v. RMR Advertising,* 632 F.Supp. 1198, 1200 (S.D.N.Y.1986)); *H.J. Inc. v. Northwestern Bell Telephone Co.,* 648 F.Supp. 419 (D.Minn.1986) (plaintiffs' attempt to "splinter a series of related acts" into a RICO cause of action "falls short of establishing a 'pattern.'" *Id.* at 425).